[No. B175242. Second Dist., Div. Three. Jan. 20, 2006.]

1231 EUCLID HOMEOWNERS ASSOCIATION, Plaintiff and Appellant, v. STATE FARM FIRE AND CASUALTY COMPANY, Defendant and Respondent.

COUNSEL

Law Offices of Steven L. Zelig and Steven L. Zelig for Plaintiff and Appellant.

Crandell, Wade & Lowe, James L. Crandall, Edwin B. Brown, Michael J. McGuire, Matthew F. Batezel; Robie & Matthai, James R. Robie; LHB Pacific Law Partners and Clarke B. Holland for Defendant and Respondent.

OPINION

**CROSKEY, Acting P. J.**—In this case, the appellant, 1231 Euclid Homeowners Association (HOA), a homeowners association of a 10-unit residential condominium, made a claim to its insurer for damages resulting from the January 17, 1994 Northridge earthquake. HOA's building was insured by the respondent, State Farm Fire and Casualty Company (State

Farm), under a policy with coverage of $1,191,600 for earthquake damage, subject to a 10 percent deductible ($119,160). The appellate record reflects that, after a preliminary inspection by representatives of *both* State Farm and HOA, it was determined that the damage sustained was largely cosmetic and totaled an amount that was well below the deductible under the State Farm policy. Thereafter, HOA withdrew its claim and State Farm closed its file. Nearly eight years later, after the passage of Code of Civil Procedure, section 340.9,[1] HOA filed this action against State Farm, alleging claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

On State Farm's motion for summary judgment, the trial court concluded that there was no dispute of material fact with respect to HOA's 1994 withdrawal of its claim. The court held that such withdrawal excused State Farm from further performance of any coverage obligation under the policy and precluded any claim for breach of contract or bad faith. State Farm's motion was granted and judgment was thereafter entered. After a review of the record on appeal, we conclude that the trial court's analysis and ruling were correct and we will therefore affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

On January 17, 1994, HOA was the homeowners association managing a 10-unit two-story condominium building at 1231 Euclid Street, Santa Monica,

---

[1] Section 340.9 provides:

"(a) Notwithstanding any other provision of law or contract, any insurance claim for damages arising out of the Northridge earthquake of 1994 *which is barred as of the effective date of this section solely because the applicable statute of limitations has or had expired* is hereby revived and a cause of action thereon may be commenced provided that the action is commenced within one year of the effective date of this section. This subdivision shall only apply to cases in which an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential Northridge earthquake damage.

"(b) Any action pursuant to this section commenced prior to, or within one year from, the effective date of this section shall not be barred based upon this limitations period.

"(c) Nothing in this section shall be construed to alter the applicable limitations period of an action that is not time barred as of the effective date of this section.

"(d) This section shall not apply to either of the following:

"(1) Any claim that has been litigated to finality in any court of competent jurisdiction prior to the effective date of this section.

"(2) Any written compromised settlement agreement which has been made between an insurer and its insured where the insured was represented by counsel admitted to the practice of law in California at the time of the settlement, and who signed the agreement" (hereafter, referred to as section 340.9; italics added).

[2] The facts we recite are taken from the trial court's order and the evidentiary showing submitted by State Farm in support of its motion. HOA failed to present any admissible evidence contradicting the relevant facts and we treat them as established by this record.

California. State Farm had issued a policy (covering the period April 1, 1993 to April 1, 1994) that provided earthquake coverage of $1,191,000, subject to a 10 percent deductible.

As of the date of the earthquake, HOA's building had a number of deferred maintenance problems. For example, prior to any damage that might have been caused by the earthquake, the building needed new plumbing and had experienced leaks and water pressure problems; also, the exterior of the building needed to be painted. In addition, there were problems involving balcony leaks, concrete cracks and uneven flooring.[3]

About 12 hours after the earthquake, building inspectors from the City of Santa Monica inspected HOA's building and determined that it was structurally safe. They placed a "green tag" on the property. Within a few days after the earthquake, a structural engineer retained by HOA's management company found no structural damage to the building, but did discover a number of stucco and plaster cracks in the walls and ceilings.[4] Shortly thereafter, a retired building inspector (who was the father of one of the residents living in HOA's building) also inspected the building and found no significant *structural* damage. He also found, however, that there was a substantial amount of cosmetic damage.

In late January 1994, HOA solicited at least five bids to make repairs to the building. None of those bids exceeded $13,000. On January 27, 1994, HOA submitted a claim of loss to State Farm. State Farm was advised by two officers of HOA that its president, Elaine Baker, was the "contact person" for the claim. On February 7, 1994, State Farm confirmed this in a letter addressed to Elaine Baker but mailed to HOA's management company.[5] In

---

[3] In July of 1993, the HOA had obtained a bid to perform some of these repairs in the amount of $13,496. This work was not completed prior to January 17, 1994.

[4] The engineer, one Rodney B. Spears, apparently expressed his findings orally to the management company and later included them in a written report, dated April 1, 1994. He recommended a number of repairs.

[5] This letter provided:

"Dear Ms. Baker: [¶] This letter is to confirm your conversation with Don Robison [State Farm's assigned adjuster] on January 28, 1994 wherein it was agreed that *you are the contact person* for your Homeowners Association for the purpose of handling this claim. We will be unable to respond to each individual unit owner, but we will be happy to address any questions you may have. This will avoid confusion and *duplication of effort* and allow us to most effectively service the associations claim. [¶] I am the team leader responsible for correspondence and communication for this claim. If you have any questions, please call me at (818) 597-4700 extension 401. [¶] Please advise your association members to direct their inquiries through you. Thank you for your cooperation. I look forward to working with you. . . ."

No person, either resident or board member at HOA, or at HOA's management company, ever advised State Farm to the contrary.

order to facilitate repairs to the building, HOA obtained a Small Business Administration (SBA) loan which, after an SBA estimator had apparently visited the property, was set in the sum of $30,200.[6]

Because she had been informed by the engineer who had inspected the property that the damage to the building did not include structural damage and was apparently largely cosmetic (e.g., multiple ceiling and wall cracks) and had received the same information from the retired building inspector, Elaine Baker formed the belief that the total damage to the building would not exceed the 10 percent deductible. After discussing it with the other tenants,[7] she advised State Farm, on or about February 18, 1994, that the previously submitted claim was withdrawn. State Farm confirmed such withdrawal by a letter dated March 2, 1994.[8] The fact and import of such withdrawal was not disputed or even questioned until this action was filed nearly eight years later, in late December 2001.

The HOA building had also received a preliminary damage inspection by Don Robison, an independent adjuster hired by State Farm. This inspection

---

[6] Subsequently, after this action was filed, HOA stated, in responses to interrogatories, that the total amount actually expended in repairs was $53,640.25. As State Farm emphasizes, this was less than one-half of the deductible under the policy.

[7] In her deposition taken in this matter on March 23, 2003, Elaine Baker testified: [¶] "Q. Now, you made the decision to withdraw the claim; is that correct? [¶] A. The board made all the decisions. I made no decisions. [¶] Q. Was there a board vote on the withdrawal? [¶] A. A board vote? You make it sound so much more formal than it was. I did nothing, absolutely nothing, without consulting all the other owners, not just the board. [¶] Q. Was there a board vote, to your recollection, on the issue of withdrawing the earthquake? [¶] A. I have no idea. If you mean did I phone the other owners and have them say, 'Yes, that's okay to do'? Yes, I certainly did."

[8] The State Farm letter to Ms. Baker reads as follows:
"1231 Euclid Homeowners Association
"c/o Ms. Elaine Baker President
"1231 Euclid Ave. [¶] Santa Monica, Ca 90404
"RE: Claim Number: 75-R040-412
 "Date of Loss: 01-17-94
 "Location: 1231 Euclid Ave.
"Dear Ms. Baker: [¶] This letter is to confirm your conversation with our adjuster Don Robison on February 18, 1994 in which you advised State Farm that the association wished to withdraw their claim for earthquake damage. [¶] We must advise you that your Condominium policy contains the following condition: [¶] 6. Legal Action Against Us. No one may bring legal action against us under this insurance unless: [¶] a. there has been full compliance with all of this insurance; and [¶] b. the action is brought within two years after the date on which the accidental direct physical loss occurred. But if the law of the state in which this policy is issued allows more than two years to bring legal action against us, that longer period of time will apply. [¶] If you have any questions, please feel free to contact me at the number below."

was conducted by Robison on or about January 29, 1994.[9] When he arrived at 1231 Euclid, he asked an HOA board member to show him all of the earthquake damage to HOA's building. She did so. They went around the building exterior, hallways and stairs looking for earthquake damage. Robison inspected only three condominium units because he was advised that those were the *only* units with *any* earthquake damage. If he had been told there was a claim of earthquake damage in the other units, he would have inspected those units as well.

Robison's opinion of the extent of the damage to HOA's building was consistent with the opinions which HOA had obtained. The earthquake damage was primarily cosmetic and involved stucco cracks and drywall cracks around windows and doors. Robison did not see sufficient cosmetic damage to the wall finishes at 1231 Euclid to suggest there was any structural damage beneath the walls. He knew that if there had been serious hidden structural damage there would also have been more serious cosmetic damage to the building's finishes. In other words, if there had been broken wood framing behind the drywall, there would also have been extensive damage to the drywall itself.

Based upon Robison's observations of cosmetic damage and his extensive experience in assessing damaged residential buildings, he formed the opinion that the earthquake did not cause structural damage to the HOA building and the cosmetic damage could be repaired by patching and painting. He admitted, however, that he had only "perused" the building, meaning that he "walked around the property, looking at both the exterior and some interior corridors and hallways and stairs." He wrote down in his claim log that he thought the repairs could be made for "+/- $10,000." He did not write a complete estimate because he felt that the total damage was *far* less than the $119,160.00 deductible. Board member Joan McCrea told Robison she was not sure HOA was going to proceed with the claim. However, Ms. McCrea asked him to communicate directly with HOA's president, Elaine Baker.

HOA went ahead and used its SBA loan to make the various repairs needed by the building. As already noted (see fn. 6, *ante*), such repairs did not exceed $56,640.25, which was *less than half* of the deductible under the policy. Neither HOA, nor its management company, nor any of its board

---

[9] HOA makes much of the fact that this was the first earthquake on which Mr. Robison worked. The record, however, demonstrates that Mr. Robison had extensive experience in assessing damage to residential buildings. During the 10 years prior to the Northridge earthquake, Mr. Robison had inspected, assessed damage to, and wrote damage estimates for many flood, hail, tornado and hurricane damaged properties. Prior to sending Mr. Robison out to adjust Northridge earthquake claims, he was given additional training in the adjustment of such claims.

members or residents ever contacted State Farm again until for nearly eight years, *after the passage of section 340.9*. An examination of the record reflects that HOA's apparent first contact with State Farm (after withdrawing its claim in 1994) was on or about January 8, 2002, when it caused the insurer to be served with this lawsuit (which had been filed on December 28, 2001, just three days before the expiration of the one-year revivor period created by section 340.9).[10] On February 11, 2002, State Farm advised HOA by letter that the matter was being referred to its litigation counsel.[11]

---

[10] The record reflects that after the passage of section 340.9, but approximately 10 days prior to the end of the one-year revivor period, State Farm sent the following *form* letter to policyholders who had previously submitted Northridge earthquake claims (the record does not disclose that this letter was in response to any contact initiated by HOA):

"December 20, 2001

"Jeanie Bedrosian

"1231 Euclid HOA

"C/O V. Paragon Companies

"P. O. Box 2153

"Santa Monica, CA 90407-2153

"RE: Policy Number: 92-65-7972-4

 "Claim Number: 75-R040-412

 "Date of Loss: January 17, 1994

"Dear Ms. Bedrosian:

"Because you have an open claim, we want you to know State Farm's position regarding the California Statute of Limitations. [¶] Last year the California Legislature enacted Code of Civil Procedure Section 340.9, which extended the Statute of Limitations for filing suit against an insurance company for damages arising out of the Northridge Earthquake. Under the terms of Code for Civil Procedures Section 340.9 the Statute of Limitations for suits involving earthquake damage will expire December 31, 2001. The provision also sets forth other conditions and limitations that may impact those cases subject to the new law. [¶] We are working to resolve your claim. While that process will continue, State Farm is not willing to further extend the Statute of Limitations for filing litigation against State Farm. [¶] This letter does not waive nor should you consider that it waives any of State Farm's legal rights. If you have questions about your legal options you should consult an attorney. [¶] Sincerely, State Farm Fire and Casualty Company."

[11] Following service of HOA's complaint in this matter, HOA sent the following letter to HOA counsel:

"February 11, 2002

"Law Offices of Joshua H. Haffner

"4222 Glencoe Ave Ste 102

"Marina Del Rey CA 90292

"RE: Your Client: 1231 Euclid Homeowners Association

 "Our Insured: 1231 Euclid Homeowners Association

 "Claim No.: 75-R040-412

 "Policy No.: 92-65-7972-4

 "Loss Location: 1231 Euclid Street

 "Santa Monica, CA 90404

 "Date of Loss: January 17, 1994

"Dear Mr. Haffner:

"This letter is in response to your lawsuit served January 8, 2002. State Farm has reviewed this matter and determined that the insured requested that their claim be withdrawn in February

After filing an answer asserting a number of affirmative defenses, including the allegation that HOA's damages did not exceed the policy's deductible clause and that HOA had failed to comply with the "Duties in the Event of Loss" provisions of the policy,[12] State Farm responded to HOA's complaint by filing a motion for summary judgment. As suggested by the record that we have just summarized, State Farm's primary contentions were that (1) HOA had in fact withdrawn its claim in early 1994 within a few weeks after originally submitting it and thus State Farm, as a matter of law, could not be liable for breach of either an express or an implied term of the policy; and, (2) in any event, the damages actually sustained by HOA as a result of the Northridge earthquake were well below the 10 percent deductible set out in the policy.

HOA responded to State Farm's detailed evidentiary showing by presenting a number of declarations, to which the trial court sustained State Farm's multiple evidentiary objections, and a "Separate State of Undisputed Facts" that was conclusionary and unsupported by any admissible or relevant evidence. Indeed, as the trial court put it, "[HOA's] separate statement of additional facts consists of eight legal conclusions asserting that State Farm breached the insurance contract and the implied covenant of good faith and fair dealing, and acted with malice, oppression and fraud . . . . No competent evidence is set forth in [HOA's] separate statements."[13]

---

1994. This request was honored by State Farm and confirmed in our letter to the insured on March 2, 1994. To date we have received no additional information that is sufficient to evaluate the scope and amount of earthquake damages. [¶] We are also aware that litigation on this claim was recently served. State Farm is assuming that you have elected to pursue this matter through litigation. Therefore, the file will be closed effective the date of this letter. If you have any additional questions, please contact Jim Robie at Robie & Matthai, (213) 624-3062 or Clarke Holland at LHB Pacific Law Partners, (510) 841-7777. [¶] We are required by California Insurance Regulations, Section 2695.7(b)(3), to advise you that if you believe this claim, or any part of this claim, has been wrongfully denied or rejected, you may have the matter reviewed by the California Department of Insurance, Claims Service Bureau, 300 South Spring Street, Los Angeles, California 90013, telephone (800) 927-4357. [¶] Sincerely, [¶] STATE FARM FIRE AND CASUALTY COMPANY."

[12] Such provisions include a requirement of (1) timely notice of loss, (2) cooperation with respect to loss investigation and protection of property from further loss and (3) submission of a *sworn* "proof of loss" statement within 60 days after request by State Farm.

[13] The record reflects that State Farm's multiple objections to the declaration of John Hall, were overruled. In his declaration, Hall had purported to offer his opinion that the damage sustained by HOA building in the Northridge earthquake was not less than $750,000. The court's specific ruling that HOA presented *no competent evidence* in opposition to the summary judgment motion was correct. While it is true that in Hall's declaration he stated that in 1994 he was a general contractor and had been involved as a consultant "in excess of 300 Northridge earthquake claims" and considered himself very knowledgeable, he nowhere demonstrated any basis for his claimed expertise in identifying structural building damage or estimating the cost of its repair. He was not an engineer, but simply a general contractor who inspected an already repaired building nearly 10 years *after* the 1994 earthquake. Moreover, he

On January 12, 2004, the trial court granted State Farm's motion for summary judgment. HOA has prosecuted this timely appeal. The parties assert the same contentions and arguments that were presented to the trial court, as summarized *ante*.[14]

## DISCUSSION

### 1. *Standard of Review*

In addressing this appeal, we apply the settled principles of summary judgment review.

Summary judgment is granted when no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 741 [41 Cal.Rptr.2d 719].) After examining documents supporting a summary judgment motion in the trial court, this court independently determines their effect as a matter of law. (*Hulett v. Farmers Ins. Exchange* (1992) 10 Cal.App.4th 1051, 1057–1058 [12 Cal.Rptr.2d 902].) The moving party bears the burden of establishing, by declarations and evidence, a complete defense to the plaintiff's action or the absence of an essential element of plaintiff's case. (*Westlye v. Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1726–1727 [22 Cal.Rptr.2d 781]; Code Civ. Proc., § 437c, subd. (f)(1).) The moving party must demonstrate that under no hypothesis is there a material factual issue requiring a trial. (*Flowmaster, Inc. v. Superior Court* (1993) 16 Cal.App.4th 1019, 1026 [20 Cal.Rptr.2d 666].) When the moving party makes that showing, the burden of proof shifts to the opposing party to show, by responsive separate statement and admissible evidence, that one or more triable issues of fact exist. (*Lorenzen-Hughes v. MacElhenny, Levy & Co.* (1994) 24 Cal.App.4th 1684, 1688 [30 Cal.Rptr.2d 210]; Code Civ. Proc., § 437c, subd. (n)(1).) An issue of fact becomes one of law and loses its

---

provided nothing but unsupported conclusions amounting to gross speculation as to why he believed that the repairs he described (and for which he himself would not bid less than $750,000 to perform) were required to repair damage caused by the earthquake 10 years earlier. For example, he relied on a "mold report" for his conclusion that mold eradication work was required without explaining how mold was caused by the earthquake; and he made no effort to distinguish between damage caused by the earthquake and repairs required to remedy the admittedly numerous *pre-earthquake* conditions.

[14] We recognize that HOA has raised in its briefs a number of issues. However, in light of our conclusion, with respect to the dispositive issues of the effect of its claim withdrawal and failure to demonstrate a proof of loss in excess of the policy deductible, there is no need for us to reach or discuss these other matters.

"triable" character if the undisputed facts leave no room for a reasonable difference of opinion. (*Preach v. Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1450 [16 Cal.Rptr.2d 320].)

### 2. *State Farm Did Not Breach Its Contractual Obligations Under the Policy*

#### a. *HOA Effectively Never Submitted a Claim on Which State Farm Was Required To Act*

 In its policy, State Farm undertook to provide coverage for any loss sustained by HOA by reason of earthquake, subject to a deductible of 10 percent. State Farm's obligation was also subject to a number of conditions. One of those conditions was that the insured provide prompt notice of the claimed loss, including a description of the lost or damaged property. In addition, the insured was required to provide a timely submission of a sworn statement of loss. Given the unrebutted evidence that State Farm was advised, on or about February 18, 1994, by HOA's president that the claim for which a notice had previously been given was withdrawn, neither of these conditions was ever met. Indeed, the voluntary withdrawal of a damage claim by an insured arguably has the same legal consequence as the failure to file any claim at all or, after filing a claim, the failure or refusal to provide to the insurer the information necessary to adjust the claim. (See, e.g., *Othman v. Globe Indemnity Co.* (9th Cir. 1985) 759 F.2d 1458, 1465.)

 While the submission of a proper and timely notice and proof of loss may be subject to a "substantial compliance" standard (*McCormick v. Sentinel Life Ins. Co.* (1984) 153 Cal.App.3d 1030, 1046 [200 Cal.Rptr. 732]) and even a predicate requirement of insurer prejudice (*Scottsdale Ins. Co. v. Essex Ins. Co.* (2002) 98 Cal.App.4th 86, 97 [119 Cal.Rptr.2d 62]), the total failure to comply with the notice and proof of loss conditions will excuse insurer liability due to the failure of a condition precedent. (See *Hickman v. London Assurance Corp.* (1920) 184 Cal. 524, 529 [195 P. 45]; *Hall v. Travelers Ins. Companies* (1971) 15 Cal.App.3d 304, 308 [93 Cal.Rptr. 159].) A fortiori, where an insured submits no claim at all or, as in this case, voluntarily withdraws the claim less than 45 days after first giving notice of the claim to the insurer, the insurer cannot be faulted for closing its file. The burden is on the insured to initiate and support a claim.

b. *HOA's Voluntary Withdrawal Effectively Resolved Its Original Claim*

This record clearly demonstrates that State Farm had every justification to conclude that HOA had *independently* determined that whatever damage its building may have sustained, it did not exceed the policy deductible. Certainly, this was entirely consistent with State Farm's own initial inspection of the property following the earthquake. For nearly eight years HOA apparently believed this to be true as it did nothing further after the February 1994 claim withdrawal until it filed this action in late December 2001. Although HOA alleges that State Farm had breached the contract of insurance, there is no factual basis for such a conclusion that is either alleged in HOA's complaint or supported by any admissible evidence submitted in opposition to State Farm's motion for summary judgment. This record reflects only that State Farm accepted HOA's claim withdrawal and took no further action. It did not at any time fail or refuse to provide demanded policy benefits. It simply closed its claim file *at HOA's request*.

 In its complaint, HOA alleged only that State Farm failed to "adequately investigate" HOA's claim of damage. This alleged investigative failure led State Farm to deny the claim "as below the deductible." This is the sole factual basis *alleged* by HOA in support of its breach of contract claim. There is however, no record support for such allegations. Indeed, the record directly contradicts such a claim. It is undisputed that in less than 45 days after the Northridge earthquake, HOA had satisfied *itself* that its damages were well below the deductible and *voluntarily* withdrew the claim.[15] That act, which is clearly demonstrated by the record excused State Farm from any obligation to conduct further investigation of possible damage to the HOA property. These circumstances demonstrate that a claim was submitted and effectively resolved, to the apparent satisfaction of the parties and in accordance with the relevant terms (i.e., the deductible provisions) of State Farm's policy. As we have previously held, a claim resolved by the parties to an insurance contract ends the matter and it will not be given new life by the

---

[15] There are no allegations in HOA's complaint nor any supported argument on appeal, that HOA reached its decision about the extent of its damage in reliance upon any acts or misrepresentations of State Farm or its adjuster. Thus, we are *not* presented with circumstances such as those discussed in *Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1152–1153 [113 Cal.Rptr.2d 70, 33 P.3d 487] or *Ward v. Allstate Ins. Co.* (C.D.Cal. 1977) 964 F.Supp. 307, 312, where the insured's delay in prosecuting a claim was held to be justified by the insured's demonstrated *reasonable reliance* on the insurer's misrepresentations as to the nature, extent or amount of the loss.

provisions of section 340.9. (See, e.g., *Rosenblum v. Safeco Ins. Co.* (2005) 126 Cal.App.4th 847, 858–859 [24 Cal.Rptr.3d 427].)

Thus, as of the date that HOA filed its complaint, State Farm was not in breach of the policy. Although HOA seems to argue otherwise, the passage of section 340.9 did not give or create any rights for HOA beyond a one-year window to file any claim *it might otherwise have.* As we explained in *Rosenblum v. Safeco Ins. Co., supra,* 126 Cal.App.4th at page 858, "[s]ection 340.9 did nothing more than reopen the filing window, for a one-year period, to those *otherwise viable* cases that had become time-barred. It did not impact or affect any other defenses that an insurer might have to an insured's claim [e.g., a voluntary abandonment in light of policy limitations]. [Citations.] Indeed, to hold otherwise, as the foregoing authorities make clear, would risk subjecting section 340.9 to the constitutional infirmity of contractual impairment."

■ Moreover, this record demonstrates that State Farm would sustain substantial prejudice as a result of HOA's voluntary withdrawal of its claim in February 1994 if now, after nearly eight years of silence, its resurrection in this lawsuit is allowed. While the "notice prejudice" rule is applicable in California and requires that an insurer must demonstrate substantial prejudice arising from an insured's failure to provide a timely notice and proof of loss (*Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1089 [234 Cal.Rptr. 835]), the undisputed record in this case establishes such prejudice to State Farm. After HOA withdrew its claim, it spent up to $53,640 in making repairs to its building. The nearly eight-year delay and the making of such repairs effectively denied to State Farm any opportunity to fully investigate the loss which HOA now argues is over 15 times greater than the amount it actually spent on repairs in 1994. As noted, HOA's voluntary claim withdrawal terminated both State Farm's obligation and reason to conduct an appropriate investigation. Obviously, critical observations of the property as it existed immediately after the earthquake would be impossible nearly eight years after the fact. A number of the unit owners who were living in the building in 1994 have sold their units and moved away and were replaced by persons who have no firsthand knowledge of the damage allegedly sustained. Indeed, the individual declared to be the "person most knowledgeable" during discovery in this matter was one Robert Wakefield, who did not even live at 1231 Euclid at the time of the earthquake. As a result of these circumstances, it is clear that HOA's failure to provide a timely notice of claim and proof of loss[16] violated the terms of the policy's

---

[16] The record reflects that HOA did not provide even a preliminary cost estimate supporting its "revived" damage claim until December 2003 (nearly 10 years after the earthquake), and this was included in its opposition to State Farm's summary judgment motion.

notice, cooperation and proof of loss provisions and State Farm *was* prejudiced thereby. The failure of those conditions precedent is a complete defense to HOA's breach of contract claim.

Section 340.9 did not create a new claim to which State Farm had some obligation to respond. It did not even purport to address any defense to a claim other than expiration of the applicable limitations period. In other words, it did nothing more than permit an insured, whose existing claim was time-barred as of December 31, 2000, but otherwise viable, a new one-year period to file suit on that claim. But here, there was no viable claim to revive. It had been resolved by HOA's voluntary withdrawal which excused any further obligation on the part of State Farm. Thus, the insurer, as a matter of law, did not breach the policy and HOA cannot successfully allege or prove that it did.

### 3. *State Farm Is Not Liable for Bad Faith*

Since State Farm was not in breach of contract and owed no policy benefits to HOA, its failure to pay such benefits cannot serve as a basis for a claim for bad faith. As the Supreme Court has clearly held, "as the . . . court [in *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136 [271 Cal.Rptr. 246]] noted, when benefits are due an insured, 'delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because' they frustrate the insured's right to receive the benefits of the contract in 'prompt compensation for losses.' [Citation.] Absent that contractual right, however, the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.' [Citation.]" (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 [44 Cal.Rptr.2d 370, 900 P.2d 619], italics added.)

As HOA could state no cause of action for breach of contract, it could not assert a claim for bad faith. The trial court properly granted summary judgment.

## *DISPOSITION*

The judgment is affirmed. State Farm shall recover its costs on appeal.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied February 7, 2006.