Filed 11/6/24  Aguila v. American Zurich Ins. Co. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| HENRY AGUILA, | B332461 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. 22NWCV00309 |
| AMERICAN ZURICH INSURANCE COMPANY, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lee W. Tsao, Judge. Affirmed.

The Tym Firm and Ronald D. Tym for Plaintiff and Appellant.

Jones Turner and Steven D. Turner for Defendant and Respondent.

## INTRODUCTION

Henry Aguila sued American Zurich Insurance Company (Zurich) for breach of an insurance policy based on Zurich's alleged failure to adjust or pay a claim for damage incurred to real property. The trial court sustained Zurich's demurrer to the operative second amended complaint (SAC) without leave to amend. In so doing, the court concluded Aguila failed to plead facts sufficient to constitute a cause of action, as he alleged the insurance claim was withdrawn while it was being adjusted.

On appeal, Aguila contends reversal is required because the SAC's allegations reflect the claim's withdrawal was invalid. For the reasons discussed below, we reject Aguila's argument and conclude the trial court correctly sustained the demurrer. We further conclude Aguila has not shown the trial court abused its discretion by declining to grant him further leave to amend. Accordingly, we affirm the judgment of dismissal.

## BACKGROUND

Aguila initiated the underlying action by filing a complaint in April 2022. The complaint pled the following facts.

On an unspecified date, Thee Aguila Inc. (TAI) agreed to purchase real property in Pomona from Investel Harbor Resorts, LLC (Investel). Zurich insured the property at all relevant times. The purchase agreement provided: (1) "if the [p]roperty suffered a loss which exceeded $10,000.00 during escrow, TAI had the right to cancel the purchase of the [p]roperty"; and (2) "if the loss of repairs exceeded $10,000.00, and TAI elected not to cancel the purchase, TAI would be entitled to any insurance proceeds applicable to said loss."

2

The complaint also alleged the property sustained two major losses before escrow closed. TAI elected not to cancel its purchase of the property, and "Investel made the [c]laim" to Zurich. "Differences arose between Investel . . . and TAI during the time that the [c]laim was being adjusted, and Investel cancelled the [c]laim." Subsequently, "TAI as the assignee of the insurance proceeds to the [c]laim objected to the cancellation of the [c]laim to Zurich." Sometime thereafter, Zurich "cancelled the [c]laim . . . ."

Based on these allegations, the complaint asserted two causes of action against Zurich: (1) breach of contract (first cause of action); and (2) breach of the covenant of good faith and fair dealing (second cause of action).[1] In further support of these causes of action, Aguila alleged: "Investel entered a contract with Zurich to insure the [p]roperty. Investel assigned its rights to the insurance proceeds to TAI for any losses incurred to the [p]roperty during escrow for the sale of the [p]roperty to TAI. TAI has assigned its rights to [Aguila] for said insurance proceeds." The complaint then alleged Zurich breached the contract and violated the covenant of good faith and fair dealing by "fail[ing] to adjust or pay the [c]laim."

Aguila filed his first amended complaint (FAC) in June 2022. The FAC corrected the original complaint's misidentification of the party against whom the second cause of action was asserted. In all other respects, the FAC's allegations were identical to those previously pled.

Zurich demurred to the FAC's first and second causes of action. It argued the FAC failed to state facts sufficient to

---

[1] Aguila also asserted a negligence claim against John Schoon, who is not a party to this appeal.

3

constitute a cause of action because, among other things, the FAC alleged Investel withdrew the insurance claim, so Zurich was not obliged to pay the claim. Zurich also contended the first cause of action was uncertain, noting the FAC omitted the dates of events determinative of whether the breach of contract claim was time-barred.

The trial court sustained Zurich's demurrer to the FAC and granted Aguila leave to amend, concluding "the FAC contains insufficient facts to support [Aguila]'s first and second [causes of action]." In so doing, the trial court explained: "Here, [Aguila] specifically alleges that Investel withdrew its claim. Consequently, pursuant to [*1231 Euclid Homeowners Assn. v. State Farm Fire & Casualty Co.* (2006) 135 Cal.App.4th 1008 (*1231 Euclid*)], Zurich's obligations under the policy were terminated. [Aguila] has not pled facts to establish the element of 'breach' necessary to maintain a breach of contract claim. [¶] Moreover, since [Aguila] has not adequately alleged a claim for breach of contract against Zurich—as alleged, Zurich 'owes no policy benefits [and] . . . its failure to pay such benefits cannot serve as a basis for a claim for bad faith.'" The trial court also noted that, in his opposition to the demurrer, Aguila "admit[ted] that the FAC 'is devoid of the operative dates and therefore uncertain . . . .'"

In January 2023, Aguila filed the operative SAC, which asserted the same causes of action as those asserted in the prior complaints.

With respect to its factual allegations, the SAC clarified that TAI and Investel entered into the purchase agreement in April 2016. At all relevant times, it alleged, Zurich insured the property, and Investel was the policy's named insured.

The SAC alleged that, as part of the purchase agreement, TAI obtained a lease granting it exclusive possession of the property pending the close of escrow. And, as pled in the prior complaints, the SAC alleged the agreement further provided: (1) "if the [p]roperty suffered a loss which exceeded $10,000.00 during escrow, TAI had the right to cancel the purchase of the [p]roperty or elect to proceed with the sale"; and (2) "if the loss of repairs exceeded $10,000.00, and TAI elected not to cancel the purchase, TAI would be entitled to any insurance proceeds applicable to said loss."

According to the SAC, the property was damaged not twice, but three times, while escrow was open. Specifically, the property was damaged by a windstorm in December 2016, vandalism in April 2017, and a fire in June 2017. Following these events, "TAI elected not to cancel the purchase of the [p]roperty and . . . instructed Investel to file a claim with Zurich for the respective losses . . . ." Investel did so.

The SAC then added the allegation that, "[o]n January 9, 2020, after the [c]laim was opened, Investel assigned its rights to the [c]laim to TAI." It also described in detail the dispute that arose between Investel and TAI during the claim's adjustment, which ultimately led "Investel [to] cancel[ ] the [c]laim." Subsequently, the SAC alleged, "TAI as the assignee of the insurance proceeds to the [c]laim objected to the [claim's] cancellation . . . to Zurich." Thereafter, "Zurich cancelled the [c]laim," and "TAI . . . assigned its rights to the [c]laim to [Aguila]."

In support of the first and second causes of action, the SAC omitted the prior complaints' allegations regarding TAI's entitlement to payment of insurance proceeds as provided in the

5

April 2016 purchase agreement, as well as TAI's subsequent assignment of those rights to Aguila. Instead, it alleged: "Investel entered a contract with Zurich to insure the [p]roperty. Investel assigned its rights to the [c]laim to TAI. TAI has assigned its rights [to] the [c]laim to [Aguila]."

Again, Zurich demurred to the first and second causes of action. Arguing the SAC failed to cure the deficiencies raised in its prior demurrer, Zurich asserted both causes of action failed because the FAC: (1) failed to state facts sufficient to constitute a cause of action; and (2) was uncertain because it omitted the dates of certain events bearing upon whether the causes of action are time-barred.

The trial court sustained Zurich's demurrer without leave to amend, concluding Aguila "has failed to allege any new facts to remedy the defects identified by the instant [d]emurrer (or this [c]ourt in its previous ruling)." Subsequently, the court entered a judgment of dismissal in Zurich's favor.

## DISCUSSION

### I. Standard of Review

"Because the function of a demurrer is to test the sufficiency of a pleading as a matter of law, we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend." (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.) "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine

6

whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## II. Analysis

### A. Demurrer to SAC

In challenging the order sustaining the demurrer to the SAC, Aguila contends the trial court erred by concluding Investel's cancellation of the insurance claim terminated Zurich's obligations under the policy. He argues: "[A]s a matter of law, the assignment of the [c]laim by Investel to TAI prior to Investel's purported cancellation of the [c]laim divested Investel of any right to validly cancel/withdraw the [c]laim. That right was solely owned by TAI, and then by Aguila when TAI assigned the [c]laim to Aguila, and neither TAI nor Aguila cancelled the [c]laim." This argument hinges upon the SAC's allegation that "[o]n January 9, 2020, after the [c]laim was opened, Investel assigned its rights to the [c]laim to TAI."

Zurich responds that we should disregard the allegation on which Aguila's argument is based, as it is inconsistent with the allegations in his prior pleadings defining the rights TAI and Aguila were assigned with respect to the claim. In support of its position, Zurich notes that "'[a] plaintiff may not discard factual allegations of a prior complaint, or avoid them by contradictory averments, in a superseding, amended pleading.'" Therefore, Zurich argues, "''a court may take judicial notice of admissions or

7

inconsistent statements by [a party] in earlier pleadings in the same lawsuit" and "may disregard conflicting factual allegations in the [challenged pleading].""" In other words, although not referenced by name in its appellate brief, Zurich contends we should apply the sham pleading doctrine to disregard the allegation in question.[2]

"[T]he 'sham pleading' doctrine . . . prevents the abuse of process that would arise if parties could circumvent prior adverse rulings by pleading the underlying facts in the alternative." (*Smyth v. Berman, supra*, 31 Cal.App.5th at p. 195.) Under the sham pleading doctrine, "when a complaint contains allegations that are fatal to a cause of action, a plaintiff cannot avoid those defects simply by filing an amended complaint that omits the problematic facts or pleads facts inconsistent with those alleged earlier." (*Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 1044.) "[A]ny inconsistences with prior pleadings must be explained; if the pleader fails to do so, the court may disregard the inconsistent allegations. [Citation.] Accordingly, a court is 'not bound to accept as true allegations contrary to factual allegations in [a] former pleading in the same

_____

2      Although the trial court did not rely on the sham pleading doctrine to sustain the demurrer, we are not prevented from doing so on appeal because "[w]e do not review the trial court's reasoning, but rather its ruling," and may affirm "[a] trial court's order . . . if correct on any theory . . . ." (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15-16; *Smyth v. Berman* (2019) 31 Cal.App.5th 183, 196 [applying sham pleading doctrine to affirm order sustaining demurrer on different grounds because appellate courts "may affirm on any ground supported by the record"].)

case.'" (*Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 946 (*Vallejo Development Co.*).)

Applying these principles, we agree with Zurich that the allegation central to Aguila's argument may be disregarded under the sham pleading doctrine. Aguila's prior pleadings alleged that, per the April 2016 purchase agreement, should the property sustain a loss while escrow was open, and the cost of repairs for the loss exceed $10,000, "TAI would be entitled to any *insurance proceeds applicable to said loss*." (Italics added.) Consistent with this allegation, the prior pleadings alleged the following in support of his first and second causes of action: "Investel entered a contract with Zurich to insure the [p]roperty. Investel assigned its rights *to the insurance proceeds* to TAI for any losses incurred by the [p]roperty during escrow for the sale of the [p]roperty to TAI. TAI has assigned its rights to [Aguila] *for said insurance proceeds*." (Italics added.) Thus, the prior pleadings specifically alleged Aguila's and TAI's rights with respect to the claim were limited solely to receipt of insurance proceeds for property loss claims where repair costs exceeded $10,000. [3] These rights, in turn, served as the foundation of the causes of action asserted against Zurich.

---

3      The specific allegations that TAI – and later Aguila by way of assignment – would be entitled to insurance *proceeds* control over the inconsistent general allegation pled at the outset in each of the prior complaints that Aguila "has been assigned all rights with respect to the" insurance *claim*. Where, as here, a pleading contains "'a general allegation, such as an allegation of an ultimate fact,'" that conflicts with the pleading's "'specific allegations that add details or explanatory facts,'" we apply "'the principle that specific allegations in a complaint control over an

In contrast with the prior pleadings, the SAC alleges Aguila's and TAI's rights were not as limited. On this point, the SAC alleges that, in addition to assigning TAI the right to the proceeds for a certain category of claims by way of the April 2016 agreement, "Investel [also] assigned its rights to the [c]laim [underlying this case] to TAI" in January 2020. Then, in support of the first and second causes of action, the SAC omits the allegations from the prior complaints referring to Aguila's and TAI's rights to insurance proceeds. Instead, the SAC alleges: "Investel entered a contract with Zurich to insure the [p]roperty. Investel assigned its rights *to the [c]laim* to TAI. TAI has assigned its rights *to the [c]laim* to [Aguila]." (Italics added.)

Accordingly, the SAC's allegations describing the rights Aguila and TAI had with respect to the underlying insurance claim are inconsistent with those alleged in the prior complaints. Moreover, in support of the first and second causes of action, the SAC omits the prior pleadings' allegations referring to the rights conferred upon TAI through the April 2016 agreement, as well as TAI's assignment of those rights to Aguila. Aguila has proffered no explanation for these inconsistencies or omissions. We therefore disregard the SAC's allegations relating to Investel's assignment to TAI of its rights to the claim in January 2020, as well as TAI's subsequent assignment of those rights to Aguila. (*Vallejo Development Co.*, *supra*, 24 Cal.App.4th at p. 946.) In addition, where they have been omitted, we will read into the SAC the prior complaints' allegations limiting TAI's and Aguila's rights to those originating from the purchase agreement. (See

---

inconsistent general allegation.'" (*Medical Marijuana, Inc. v. ProjectCBD.com* (2016) 6 Cal.App.5th 602, 620, italics omitted.)

10

*Tindell v. Murphy* (2018) 22 Cal.App.5th 1239, 1248 [plaintiff's failure to explain an amended complaint's omission of harmful allegations previously pled "allows the court to . . . read into the amended complaint the allegations of the superseded complaint"].)

Construing the SAC in this manner, we accept as true its allegation that Investel, the policy's named insured, "cancelled the [c]laim" underlying this case and reject Aguila's contention that it lacked authority to do so. Because "the voluntary withdrawal of a damage claim by an insured arguably has the same legal consequence as the failure to file any claim at all[,]" Zurich had no obligation to pay or adjust the claim. (*1231 Euclid*, *supra*, 135 Cal.App.4th at pp. 1018, 1021.) Thus, as a matter of law, the SAC demonstrates Zurich did not breach the policy and, therefore, fails to state facts sufficient to constitute a cause of action for breach of contract. (*Id.* at p. 1021.) For this reason, the trial court correctly sustained Zurich's demurrer to the first cause of action.

The trial court also did not err by sustaining the demurrer to the second cause of action. Because Zurich "was not in breach of contract and owed no policy benefits to [Aguila], its failure to pay such benefits cannot serve as a basis for a claim for bad faith." (*1231 Euclid*, *supra*, 135 Cal.App.4th at p. 1021.) In other words, since the SAC reflects Zurich did not breach the policy by failing to pay or adjust the insurance claim, the SAC also fails to state facts sufficient to constitute a cause of action for breach of the covenant of good faith and fair dealing based on the same conduct.

In sum, for the reasons discussed above, the trial court correctly sustained Zurich's demurrer based on the SAC's failure

to state facts sufficient to constitute a cause of action. We therefore need not address the parties' arguments regarding whether the SAC was subject to demurrer based on uncertainty.

## B.     Leave to Amend

"When a demurrer is sustained without leave to amend, this court decides whether a reasonable possibility exists that amendment may cure the defect; if it can we reverse, but if not we affirm. The plaintiff bears the burden of proving there is a reasonable possibility of amendment. [Citation.] The plaintiff may make this showing for the first time on appeal. [Citations.] [¶] To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 (*Rakestraw*).) The proffered "[a]llegations must be factual and specific, not vague or conclusionary." (*Id.* at p. 44.) "Where the appellant offers no allegations to support the possibility of amendment . . . there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend." (*Ibid*.)

Aguila has not satisfied his burden. He argues he should have been granted leave to amend because he can clarify the dates on which certain events took place to avoid demurrer on the grounds of uncertainty. As discussed above, however, the trial court correctly sustained the demurrer based on the SAC's failure to state facts sufficient to constitute a cause of action. On this point, Aguila has not "'show[n] in what manner he can amend his [SAC]'" to cure the deficiencies underlying its ruling. (*Rakestraw*,

*supra*, 81 Cal.App.4th at p. 43.) We therefore discern no abuse of discretion in the trial court's denial of further leave to amend.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

CURREY, P. J.

We concur:

COLLINS, J.

ZUKIN, J.

13