[No. B172406. Second Dist., Div. Three. Feb. 10, 2005.]

THELMA K. ROSENBLUM, as Trustee, etc., Plaintiff and Appellant, v. SAFECO INSURANCE COMPANY, Defendants and Respondents.

## Counsel

Law Offices of Steven L. Zelig and Steven L. Zelig for Plaintiff and Appellant.

Demler, Armstrong & Rowland, Michael E. Wade and Cynthia A. Palin for Defendants and Respondents.

## Opinion

**CROSKEY, J.**—The plaintiff and appellant, Thelma K. Rosenblum,[1] asks us to reverse a summary judgment entered on her amended complaint in favor of the defendant and respondent, Safeco Insurance Company (Safeco). After negotiating a settlement of her claim and executing a full release upon the payment of the agreed amount by Safeco, Rosenblum filed this action alleging that she had entered into the settlement under duress and due to the fraudulent misrepresentations of Safeco. She further alleged that, in spite of such negotiated settlement, her claim had been revived by the passage of Code of Civil Procedure, section 340.9 (section 340.9).[2]

The trial court granted Safeco's motion for summary judgment on the grounds that (1) Rosenblum had not presented evidence sufficient to raise a triable issue of fact on her claims of duress and fraud and (2) section 340.9 was a revivor statute that served only to overcome any time limitations

---

[1] Technically, Rosenblum appears herein as the trustee of Sidney Rosenblum Marital Trust in which name title to the subject property is apparently held. For the sake of simplicity and convenience, we refer to the plaintiff as "Rosenblum."

[2] See footnote 10, *post.*

defense Safeco might have had, but it did not operate to revive a claim that had been extinguished by a validly executed release. Because we agree with the trial court's reasoning and conclusion, we will affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

On January 17, 1994, a certain residential rental property (a triplex located at 3810–3812 Aloha and 3811 Tracy in Los Angeles) owned by Rosenblum was damaged in the Northridge earthquake. On March 21, 1994, Rosenblum submitted a claim to Safeco, which had issued her a property insurance policy covering the period July 1, 1993 to July 1, 1994.

Safeco assigned the claim to an adjuster, who inspected Rosenblum's property and found damage to the foundation. Safeco retained three different engineers, who inspected the damage and prepared a report covering repair guidelines for not only the foundation, but also the floor framing, exterior stucco and interior plaster of the triplex. On November 5, 1994, Rosenblum was paid $4,900 for loss of use.

On November 15, 1994, Safeco's adjustor calculated the cost of completing the earthquake related repairs at $88,335.08 for dwelling repairs and $15,334.10 for other structures. Rosenblum's own contractor was then contacted to see if an agreement could be reached on the scope of repairs and the total cost thereof.

On December 14, 1994, Safeco wrote a letter to Rosenblum that stated: "With the one year anniversary of the January 17, 1994 Northridge earthquake approaching, we want to point out a policy provision contained in GENERAL CONDITIONS which reads as follows: [¶] 11. Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss or damage. [¶] *The one year time limitation begins after SAFECO has completed the adjustment of your claim.* Your claim is completed when we determine the repair and/or replacement cost of your loss and an Actual Cash Value payment is made. *We will send you a letter when we believe we have concluded your claim.*" (Italics added.)

On January 20, 1995, Safeco calculated the amount due Rosenblum as follows: (1) $88,335.08 for dwelling repairs, less $46,753.92 in (recoverable)

---

[3] The facts we recite are taken from the factual presentation made by Safeco in support of its motion for summary judgment. The facts are not, as we note, disputed by Rosenblum, although she asserts an evidentiary objection to Safeco's showing. As we also discuss below, we find Rosenblum's evidentiary objections to be without merit.

depreciation[4] and a $27,000 deductible, for a net amount payable of $13,881.16. (2) For other structures, $15,334.10 from which $6,686.36 in depreciation and a $2,770 deductible were taken, for a net amount payable of $5,877.74. These net amounts were paid on January 21, 1995.

On February 7, 1995, Rosenblum's own contractor confirmed in writing his agreement with Safeco's repair cost estimate and that it had identified all known and visible damage. He further agreed that the estimated cost was an amount sufficient to complete all listed repairs. On February 23, 1995, Safeco paid Rosenblum an additional $15,500 for loss of use.

On April 13, 1995, Safeco wrote another letter to Rosenblum regarding relevant time limitations applicable to the enforcement of her claim. It stated: "Now that we have reached an agreement on your claim, it is important that you be reminded of a policy condition that affects your rights under the policy contract. This condition is the Suit Against Us clause contained in your policy. [¶] Section 1—General Conditions [ . . . [¶] . . . ] 11. Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss or damage. [ . . . [¶] . . . ] Should your contractor discover hidden damage not part of this Agreed Cost of Repair, please notify SAFECO prior to making these repairs to give us the opportunity to inspect the additional damage. [¶] SAFECO *believes you have 1 year from February 23, 1995 left under the Suit Against Us clause.* Thank you for your cooperation in bringing this matter to a conclusion." (Italics added.)

After monitoring repairs made by Rosenblum, Safeco, on May 24, 1995, paid her $35,922.47 in recoverable depreciation. After Rosenblum contacted Safeco regarding repair of the foundation,[5] Safeco wrote to her on January 4, 1996, stating that, "[t]here is no time limit on recovery of the withheld depreciation for the foundation repairs. However, you should be reminded of a policy condition that affects your rights under the policy contract. This is the Suit Against Us clause contained in your policy. This clause was explained to you in a letter from Bob Garner dated April 13, 1995. I am enclosing a copy of this letter for your information. *The one-year limitation expires on February 23, 1996. This would affect any hidden or supplemental damage found after 2/23/96.*" (Italics added.)

In July 1996, Rosenblum contacted Safeco and requested payment of (1) the amount ($8,227.11) withheld for depreciation for repair of the foundation,

---

[4] Under the policy, Rosenblum was entitled to recoup such depreciation (under the "replacement cost" provisions) *after* she had actually caused the repairs to be made and paid for them.

[5] Safeco had previously allowed $16,736.22 for repair of the foundation and withheld $8,227.11 in recoverable depreciation.

(2) $4,868.50 for repairs to the plumbing, and (3) $1,186.65 paid by Rosenblum to her tenants for repairs they had made. Substantially all of these expenses had been incurred by Rosenblum prior to the February 23, 1996 date set out in the Safeco letter quoted above.[6] Safeco responded with a letter dated July 17, 1996 enclosing a proof of loss form for completion and submission by Rosenblum.[7]

On July 29, 1996, Rosenblum contacted Safeco by telephone and complained that it was taking too long to complete the adjustment of her claim. She stated that she did not want to hire an attorney, but demanded that she be reimbursed for all of the disputed expenses. Approximately 10 days later, on August 7, 1996, Safeco paid her the $8,227.41 that had been withheld for depreciation on foundation repair.

Following this payment, Safeco and Rosenblum entered into negotiations regarding the remaining two items of dispute (i.e., costs for plumbing and tenant repairs), an amount that totaled $6,055.18. Rosenblum initially agreed to settle for $7,500, but later changed her mind and demanded $11,000. Safeco agreed to pay this sum for a full and complete release. The record does not reflect that Safeco at any time raised any time limitations objections to Rosenblum's demands. On August 12, 1996, Safeco sent Rosenblum a settlement agreement and release. In its cover letter, Safeco stated, "Dear Mrs. Rosenblum: [¶] This 'Settlement Agreement and Release' is a legal

---

[6] Apparently, an expense of $385.00 had been paid by Rosenblum on March 21, 1996, but neither party has made an issue of the matter.

[7] In this letter, Safeco stated: "Enclosed is a Proof of Loss form which documents the completion of the foundation repairs for the above insured location. Please sign the document, have it notarized and return it . . . . Upon receipt, you will be reimbursed for the remaining replacement cost of $8,227.11 for the foundation repairs. Please note that the US Small Business Administration will be named on the check since they now appear as an additional interest on your policy. [¶] The other issue that remains open is the supplemental damage not included in our Agreed Cost of Repair with Dale Rodin Construction [i.e., Rosenblum's own contractor]. As we discussed in our meeting at your house, there is a coverage issue that exists involving the reporting of supplemental damage. Please refer to your Insurance Policy (Dwelling Fire Policy) to the 'General Condition Section'. [¶] 4. Your Duties After Loss. In case of a loss to which this insurance may apply, you shall see the following duties are performed: [¶] a. give immediate notice to us or our agent; [¶] 11. Suit Against Us. No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss. [¶] In order to determine if coverage exists for the supplemental plumbing bills and repairs by the tenant, it will be necessary to take your recorded statement. This could be done in person at your house or over the telephone. The statement will assist our investigation of the coverage issue. Once we have completed our investigation, we will inform you of our coverage decision. Please call me once you have received this letter so we can arrange a time to take your statement."

document. It is [Safeco's] understanding that you are not represented by an attorney to assist you in understanding the effect of signing a release. *The legal effect of signing a release will conclude this Claim with final resolution. Even if you discover additional issues or new disputes, you will be giving up all rights to make further claims* under this particular claim identified as SAFECO Claim # 02A 94080 1762. [¶] This letter will confirm we have reached an agreement to resolve all disputes between us under the terms outlined in the Settlement Agreement and Release. Both parties have reached this agreement by voluntary settlement discussions." (Italics added.)

Rosenblum countersigned this letter acknowledging her agreement on August 16, 1996. At the same time she signed and returned the settlement agreement and release.[8] Safeco paid Rosenblum $11,000 by a check dated August 14, 1996.

---

[8] The settlement agreement and release signed by Rosenblum provided, in relevant part: ". . . The parties to this Agreement, each without admitting the validity or veracity of the contentions of the other, in order to resolve the disputes between them and to avoid the difficulty, expense and inconvenience of ongoing claim adjustment proceedings, settle the above referenced Claim and any other controversy arising therefrom for the total amount of $104,417.53 (hereinafter the 'settlement') on the terms and conditions herein set forth. This sum includes previous payments for this Claim of $63,173.24 for damage to the building under Coverage A, $5,877.74 for other structures under Coverage B, and $24,366.55 under Coverage D. An additional payment of $11,000 will be paid on the terms and conditions herein set forth. . . . [¶] . . .

"ROSENBLUM absolutely and forever releases and discharges SAFECO and its shareholders, officers, agents, directors, employees, adjusters, affiliates, subsidiaries, representatives, partners, associates, principals, attorneys, predecessors, successors and assigns, and each of them, of and from any and all claims, rights, damages, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, actions and causes of action of every kind and nature whatsoever, whether now known or unknown, including but not limited to any and all claims for breach of contract, breach of covenants of good faith and fair dealing, statutory violations of Insurance Code, § 790.03 et. seq., and any other alleged violations of Department of Insurance regulations, which ROSENBLUM now have, own, or hold, or at any time heretofore had, owned or held, or could, shall or may hereafter have, own or hold, arising out of, the Claim, (all of which shall be collectively referred to hereinafter as the 'released matters'), except that such release and discharge shall not apply with respect to any promises, agreements, warranties or indemnities contained in this Agreement. [¶]

"It is the intention of the parties in executing this Agreement that this instrument shall be effective as a full and final accord and satisfaction and general release of each and every released matter. In furtherance of this intention, ROSENBLUM expressly waives any and all rights that might be claimed by reason of Section 1542 of the California Civil Code, which provides as follows: [¶] 'A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.' [¶] . . .

"This Agreement constitutes the entire understanding and agreement between the parties hereto with respect to the subjects referred to herein and no representations have been made by either side to the other except those expressly referred to herein; any and all prior agreements, understanding or representations are hereby terminated and canceled in their entirety and are of no further force or effect."

On December 26, 2001, over five years after she had "settled" her claim with Safeco,[9] Rosenblum filed this action for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) violation of Business and Professions Code, section 17200. After several law and motion proceedings, Safeco filed a motion for summary judgment on April 22, 2003. A detailed summary of the factual showing on which it relied has been set forth above and it was (and is) Safeco's contention that Rosenblum's agreement to a negotiated settlement and release of her claim forecloses her action. *Safeco has raised no issue with respect to any time limitation defense.*

Rosenblum responded by arguing that since the settlement agreement and release had not been signed by an attorney admitted in California, it was not binding on her in light of the provisions of section 340.9 and, in any event, she had been induced to sign that document due to the fraud and duress of Safeco. The only evidence that she provided on this point, however, was her own declaration which stated: "1. I am a Plaintiff and am trustee of the Sidney Rosenblum Marital Trust. [¶] 2. Without admitting or acknowledging that I signed any release, in July of 1996, I was informed by SAFECO that the statute of limitations on my claim was January 17, 1995, the year anniversary of the date of loss. The fact that SAFECO was advising me that my right to enforce performance under the insurance policy had been lost as of January 17, 1995 was very important and material relative to any decision or alleged commitment I made relative to the claim. Conversely, SAFECO did not advise at that point in time that the statute of limitations contained within the insurance policy stopped running while the claim was ongoing."

On October 15, 2003, the trial court concluded (1) that Rosenblum had not presented sufficient evidence to raise a triable issue of fact with respect to her claims of fraud and duress, and (2) section 340.9 had no impact on any defense an insurer might have to an insured's claim, except one based on statutory or contractual time limitation; since Safeco was not relying on such a defense, section 340.9 did assist Rosenblum. The trial court also rejected Rosenblum's evidentiary objections to Safeco's factual showing. As already indicated, we find ourselves in agreement with the trial court.

### CONTENTIONS OF THE PARTIES

Rosenblum argues that section 340.9 operates to revive her claim since the settlement agreement and release is not valid because it was not signed by a

---

[9] As we discuss below, no issue is presented with respect to this long delay in light of Rosenblum's reliance on section 340.9, the revivor statute.

California attorney as required by that statute. She also urges that she was induced to sign it by Safeco's misrepresentations to her about the viability of her claim thus forcing her to agree to a settlement that would not have otherwise been acceptable. Finally, she claims that Safeco's evidentiary showing is based entirely on records contained in its files that were not properly authenticated as "business records" and therefore were inadmissible.

Safeco disputes each of these arguments and contends that the trial court properly analyzed and ruled on the issues and that its judgment should be affirmed.

## DISCUSSION

### 1. *Standard of Review*

■ In this appeal we are first required to construe and apply section 340.9. This presents a question of law and our standard of review is de novo. (*Bialo v. Western Mutual Ins. Co.* (2002) 95 Cal.App.4th 68, 76–77 [115 Cal.Rptr.2d 3].) With respect to the remainder of Rosenblum's attack on the judgment, we apply settled principles of summary judgment review.

■ Summary judgment is granted when no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 741 [41 Cal.Rptr.2d 719].) ■ After examining documents supporting a summary judgment motion in the trial court, this court independently determines their effect as a matter of law. (*Hulett v. Farmers Ins. Exchange* (1992) 10 Cal.App.4th 1051, 1057–1058 [12 Cal.Rptr.2d 902].) ■ The moving party bears the burden of establishing, by declarations and evidence, a complete defense to plaintiff's action or the absence of an essential element of plaintiff's case. (*Westlye v. Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1726–1727 [22 Cal.Rptr.2d 781]; Code Civ. Proc., § 437c, subd. (f)(1).) The moving party must demonstrate that under no hypothesis is there a material factual issue requiring a trial. (*Flowmaster, Inc. v. Superior Court* (1993) 16 Cal.App.4th 1019, 1026 [20 Cal.Rptr.2d 666].)

When the moving party makes that showing, the burden of proof shifts to the opposing party to show, by responsive separate statement and admissible evidence, that triable issue of fact exist. (*Lorenzen-Hughes v. MacElhenny, Levy & Co.* (1994) 24 Cal.App.4th 1684, 1688 [30 Cal.Rptr.2d 210]; Code Civ. Proc., § 437c, subd. (n)(1).) An issue of fact becomes one of law and loses its "triable" character if the undisputed facts leave no room for

a reasonable difference of opinion. (*Preach v. Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1450 [16 Cal.Rptr.2d 320].)

As the party moving for summary judgment, Safeco bore an initial burden of production of a prima facie showing that there was no triable issue of material fact in this case and it was entitled to judgment as a matter of law. Only if Safeco carried that burden would Rosenblum be faced with a burden of production of her own—to make a prima facie showing of the existence of a triable issue of material fact. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) "A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.] No more is called for." (*Id.* at p. 851.) "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . . [A] defendant bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. ([Code Civ. Proc.,] § 437c, subd. (o)(2).)" (*Id.* at p. 850, italics and fns. omitted.)

### 2. *Section 340.9 Serves Only to Eliminate Certain Time Limitation Defenses*

Section 340.9,[10] which became effective on January 1, 2001, revives, subject to certain conditions and limitations, insurance claims "arising out of

---

[10] Section 340.9 provides:

"(a) Notwithstanding any other provision of law or contract, any insurance claim for damages arising out of the Northridge earthquake of 1994 *which is barred as of the effective date of this section solely because the applicable statute of limitations has or had expired* is hereby revived and a cause of action thereon may be commenced provided that the action is commenced within one year of the effective date of this section. This subdivision shall only apply to cases in which an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential Northridge earthquake damage.

"(b) Any action pursuant to this section commenced prior to, or within one year from, the effective date of this section shall not be barred based upon this limitations period.

"(c) Nothing in this section shall be construed to alter the applicable limitations period of an action that is not time barred as of the effective date of this section.

"(d) *This section shall not apply to either of the following:*

"(1) Any claim that has been litigated to finality in any court of competent jurisdiction prior to the effective date of this section.

"(2) *Any written compromised settlement agreement which has been made between an insurer and its insured where the insured was represented by counsel admitted to the practice of law in California at the time of the settlement, and who signed the agreement.*" (Italics added.)

the Northridge earthquake of 1994" that previously had been barred by the "applicable statute of limitations."[11]

Rosenblum seeks to rely on section 340.9 as a basis for relieving her of the burden of the August 16, 1996 settlement agreement and release that she entered into with Safeco. Specifically, she points to subdivision (d)(2) of section 340.9. It states that the section will not apply to (and thus would *not* revive a time-barred claim that had been resolved by) "[a]ny written compromised settlement agreement which has been made between an insurer and its insured where the insured was represented by counsel admitted to the practice of law in California at the time of the settlement, and who signed the agreement." Simply put, it is Rosenblum's contention that since the settlement agreement and release with Safeco was *not* signed by California counsel, then section 340.9 applies to revive her claim and she is not barred by her 1996 release of the claim. This argument is not convincing.

█ What Rosenblum overlooks is that section 340.9 was enacted in order to revive claims that were barred "*solely* because the applicable statute of limitations has or had expired." (Italics added.) As we explained in *20th Century*, one of the reasons that section 340.9 did not violate the constitutional proscription on impairment of contracts was that the "application of section 340.9 to settlement agreements entered into without California counsel does not substantially impair such contracts. The statute on its face does not declare the agreements null or void; it simply revives [time] barred claims so that they can be further addressed. Indeed, the statute's reference to settlement agreements serves only to describe one of the circumstances where section 340.9 will *not* apply. The ultimate viability of those settlement agreements is not 'impaired.' " (*20th Century, supra,* 90 Cal.App.4th at p. 1270.)

█ Section 340.9 did nothing more than reopen the filing window, for a one-year period, to those *otherwise viable* cases that had become time-barred. It did not impact or affect any other defenses that an insurer might have to an insured's claim. (See *Hellinger v. Farmers Group, Inc.* (2001) 91 Cal.App.4th 1049, 1065–1066 [111 Cal.Rptr.2d 268]; *Bialo v. Western Mutual Ins. Co., supra,* 95 Cal.App.4th at p. 82.) Indeed, to hold otherwise, as the foregoing authorities make clear, would risk subjecting section 340.9 to the constitutional infirmity of contractual impairment.

█ Here, Safeco has never asserted a time limitation defense and it does not do so in this appeal. The motion for summary judgment was made and

---

[11] As we explained in *20th Century Ins. Co. v. Superior Court* (2001) 90 Cal.App.4th 1247 [109 Cal.Rptr.2d 611] (*20th Century*), the term *statute of limitations,* as used in section 340.9, also extends to the 12-month contractual limitation period relevant to this matter. (*20th Century,* at pp. 1276–1277.)

granted on the basis of the viability of a negotiated settlement and release of Rosenblum's claim. The defense of prior settlement and release is not affected by the operation of section 340.9. Unless the settlement agreement and release was infected with fraud or duress, as Rosenblum claims, it is valid and enforceable and is a complete defense to this action even though Rosenblum did not have counsel and the written agreement was not signed by California counsel.[12] We now turn to that issue.

### 3. *Rosenblum Presented No Evidence of Fraud or Duress*

Rosenblum argues in her brief that the settlement agreement and release on which Safeco relies, and which the trial court enforced, was procured under false pretenses, including a misrepresentation to Rosenblum that any legal rights that she had to pursue a breach of contract or bad faith action had expired on January 17, 1995, one year after the date of her loss. This representation, she claims, was contrary to law because it ignored (1) the tolling period that runs during the period from claim filing to claim denial (see *Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 693 [274 Cal.Rptr. 387, 798 P.2d 1230]), as well as (2) the effect of relevant regulations of the Department of Insurance regarding an insurer's duty to provide accurate and timely notice to an insured claimant of any applicable time limitation (see *Spray, Gould & Bowers v. Associated Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260, 1269 [84 Cal.Rptr.2d 552]). She also claims that she executed the 1996 settlement agreement and release under duress because Safeco had threatened to cancel her policy and she was never advised as to the legal effect of her execution of that instrument.

Rosenblum, however, offers no persuasive evidence to support such claims. The only evidence presented is her short one-half page declaration in which she states that Safeco informed her (on some undisclosed date(s)) that "the statute of limitations on [her] claim was January 17, 1995 . . ." and such representation "was very important and material relative to any decision or alleged commitment I made relative to the claim." She also stated that Safeco did not advise her that such statute of limitations "contained within the insurance policy stopped running while the claim was ongoing." That is it; this is the sum total of her evidentiary response to Safeco's motion.

Leaving aside the inadequacy of such showing, the record before us demonstrates that her statements are patently false. An examination of the several letters sent to Rosenblum by Safeco (and described above in our

---

[12] We note with emphasis that Rosenblum has provided no evidence whatever that she discovered additional damage to her home after the February 23, 1996 deadline for which she now seeks further compensation. Nor does she provide any showing that the amounts paid to her by Safeco did not reflect a fair and reasonable valuation of her loss.

factual summary) demonstrates the truth of the matter. Rosenblum makes no claim that she did not receive each of these communications.

In the letter dated December 14, 1994, Safeco expressly advised Rosenblum that the one-year limitation *would not begin* until ". . . Safeco has completed the adjustment of your claim. Your claim is completed when we determine the repair and/or replacement cost of your loss and an Actual Cash Value payment is made. We will send you a letter when we believe we have concluded your claim."

By February 23, 1995, the cash value payments (as opposed to the replacement cost payments to be made *after* completion of repairs) due pursuant to the agreement between Safeco and Rosenblum's contractor, had been made. Thus, Safeco wrote to Rosenblum on April 13, 1995 reminding her again of the one-year limitation and expressing Safeco's *"belief"* that such period commenced to run on *February 23, 1995*. The cash value payments in fact reflected an agreed resolution of all of Rosenblum's claims, except for the recoverable depreciation due under the replacement cost provisions of Safeco's policy and payable *after* Rosenblum had caused the required repairs to be made and had paid for them.

With respect to such depreciation recovery, Safeco wrote to Rosenblum on January 4, 1996, and advised her that the one-year time limitation did *not* apply to withheld depreciation. By that time, Safeco had already paid to Rosenblum depreciation for all repairs except for the foundation ($8,227.11). By July 1996, Rosenblum complained that the process was taking too long and demanded payment for the foundation depreciation, plus plumbing repairs ($4,868.50) and repairs made by Rosenblum's tenants ($1,186.68), both matters that had not previously been agreed to but which were costs for matters discovered and repaired prior to the February 23, 1996 deadline. On August 7, 1996, Safeco paid the $8,227.11 due for withheld depreciation on the foundation. Safeco and Rosenblum then negotiated with respect to the remaining $6,055.18. Rosenblum initially agreed to accept $7,500, but later demanded $11,000. As already mentioned, Safeco paid this amount on August 14, 1996, as part of the consideration for the settlement agreement and release of August 16, 1996.

Rosenblum *argues* that she was not informed by Safeco as to the effect of execution of that agreement. This argument is not supported by the record and, indeed, is directly contrary to it. Rosenblum not only does not support this claim on her declaration, she does not even dispute that she received Safeco's cover letter of August 12, 1996, which stated, in relevant part: "This

'Settlement Agreement and Release' is a legal document. It is [Safeco's] understanding that you are not represented by an attorney to assist you in understanding the effect of signing a release. *The legal effect of signing a release will conclude this Claim with final resolution. Even if you discover additional issues or new disputes, you will be giving up all rights to make further claims under this particular claim.* . . . [¶] This letter will confirm we have reached an agreement to resolve all disputes between us under the terms outlined in the Settlement Agreement and Release. Both parties have reached this agreement by voluntary settlement discussions." (Italics added.)

Similarly, Rosenblum's argument regarding duress (due to a threat of policy cancellation) is without merit. The record reflects that Safeco did not elect to renew her policy on July 1, 1995. Thus, her policy had ended over one full year prior to her negotiation and execution of the settlement agreement and release. Obviously, the termination of the policy was no longer a prospective matter in August of 1996 and a threat to "cancel" her policy could not have been the source of any duress to Rosenblum. Moreover, she said nothing about such claimed duress in her declaration.

From this review of the undisputed facts,[13] it is clear that Rosenblum negotiated a settlement and release of her claim with Safeco and the matter was finally resolved by Safeco's full payment of the agreed amount. Rosenblum is therefore bound, unless her evidentiary objection to Safeco's factual presentation has merit. We now briefly discuss that matter.

### 4. *Rosenblum's Objection to Safeco's Evidentiary Showing Is Without Merit*

Rosenblum attacks Safeco's evidentiary presentation in support of its motion for summary judgment on the ground that it constitutes inadmissible hearsay to which she asserted a timely objection. She contends that the declaration of Alvena Johnston (a Safeco claims analyst), which described and tendered the several documents (e.g., the settlement and release agreement documents, correspondence sent to Rosenblum, etc.) on which Safeco relied, were not properly authenticated and therefore were inadmissible. Rosenblum contends that the Johnston declaration does not comply with the requirements of Evidence Code, section 1271.[14]

---

[13] Rosenblum's separate statement filed in opposition to Safeco's motion for summary judgment purported to dispute each of the factual matters summarized above, but did so only on the basis of the evidentiary objection that we discuss in the next section.

[14] Evidence Code, section 1271 provides: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if:

"(a) The writing was made in the regular course of a business;

In her declaration dated April 1, 2003, Ms. Johnston stated, in part, that she was a claims analyst for Safeco and, if called as a witness could competently testify as follows:

"2. I am familiar with the manner and method used by the various Safeco insurers in maintaining documents related to insurance claims. I have personally reviewed the file maintained on insured Thelma Rosenblum's claim for benefits arising from the January 17, 1994 Northridge earthquake; designated as claim no. 02A940801762.

"3. The claim file for insured Thelma Rosenblum was maintained in the ordinary course of business. It is the business practice of all Safeco insurers to place all significant correspondence, estimates, and other documents related to a particular claim in the claim file. Documents are placed in the claim file at or about the time that the document is received or at the time a correspondence is mailed out. For example, a report or letter is placed in the claim file at or about the time it was received. A correspondence is copied and placed in the claim file at or about the time the correspondence was mailed or received. Phone conversations are documented in file memos at or about the time of the call.

"4. Employees of all Safeco insurers are under a business duty to record significant claim handling events by placing correspondence or reports concerning a claim in the claim file at or about the time the correspondence/report is received or sent and documenting important phone conversations in file memos."

Rosenblum argues that these statements do not satisfy the provisions of Evidence Code section 1271 in that they do not reflect that Ms. Johnston had any personal knowledge of how Safeco maintained documents and records in the 1994–1996 period (e.g., nothing is said as to how long Ms. Johnston had been employed by Safeco) and thus she cannot competently testify as to the manner and mode of preparation of the various documents. We need not be long detained by this contention.

---

"(b) The writing was made at or near the time of the act, condition, or event;
"(c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and
"(d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

First, section 1271 requires only that a custodian *or other qualified witness* identify the documents. Second, and more importantly, it does not appear that there is any dispute about any of the documents on which the trial court relied. Nowhere (not in her declaration or in her appellate briefs) does Rosenblum deny that she actually signed the settlement and release documents including the agreement and the cover letter advising her of the agreement's legal significance.[15] Nor does she claim that she did not receive all of the correspondence and payments reflected in the documents attached to Ms. Johnston's declaration. As a result, we do not even have a "business records" issue. Rather, this record reflects nothing more complicated than the presentation to the court of copies of several pieces of correspondence, the receipt and contents of which Rosenblum does not dispute, and a dispositive contract that she admits to having signed. We thus do not perceive the hearsay issue to which a business records exception might apply. The copies of the settlement agreement and release and the Safeco correspondence documents do not amount to hearsay declarations, but are *themselves* direct evidence of their undisputed contents and such contents, and their undisputed delivery to Rosenblum, are relevant. With respect to the use of copies, however, Rosenblum does not raise, and therefore has waived, any issue as to the "secondary evidence rule."[16] These documents were properly received and Rosenblum's objections are without merit.

---

[15] In fact, Rosenblum actually argues that she did sign the settlement agreement and release, but did so under duress and upon Safeco's misrepresentation of fact.

[16] Evidence Code, section 1521, provides:

"(a) The content of a writing may be proved by otherwise admissible secondary evidence. The court shall exclude secondary evidence of the content of writing if the court determines either of the following:

"(1) A genuine dispute exists concerning material terms of the writing and justice requires the exclusion.

"(2) Admission of the secondary evidence would be unfair.

"(b) Nothing in this section makes admissible oral testimony to prove the content of a writing if the testimony is inadmissible under Section 1523 (oral testimony of the content of a writing).

"(c) Nothing in this section excuses compliance with Section 1401 (authentication).

"(d) This section shall be known as the 'Secondary Evidence Rule.' "

Evidence Code, section 1400 provides:

"Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law."

Evidence Code, section 1401 provides:

"(a) Authentication of a writing is required before it may be received in evidence.

"(b) Authentication of a writing is required before secondary evidence of its content may be received in evidence."

## *DISPOSITION*

The judgment is affirmed. Safeco shall recover its costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied March 2, 2005, and appellant's petition for review by the Supreme Court was denied June 8, 2005.