[No. B182575. Second Dist., Div. Seven. Sept. 20, 2006.]

CHEVIOT VISTA HOMEOWNERS ASSOCIATION, Plaintiff and Appellant, v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant and Respondent.

Loewenthal, Hillshafer & Rosen and Glenn T. Rosen for Plaintiff and Appellant.

LHB Pacific Law Partners, Clarke B. Holland, Lisa L. Kirk; Crandall, Wade & Lowe, Michael J. McGuire; Robie & Matthai and James R. Robie for Defendant and Respondent.

OPINION

**PERLUSS, P. J.**—Cheviot Vista Homeowners Association (Homeowners Association) appeals from the judgment entered after the trial court granted summary judgment in favor of State Farm Fire and Casualty Company (State Farm) in the Homeowners Association's action concerning the adjustment of its property damage losses from the 1994 Northridge earthquake. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Homeowners Association's Earthquake Coverage and Northridge Earthquake Damage Claim*

Prior to the January 17, 1994 Northridge earthquake, State Farm issued a condominium association policy with an endorsement for earthquake coverage to the Homeowners Association insuring a 22-unit condominium building located at 3231 Cheviot Vista Place, Los Angeles. The policy in effect from March 14, 1993, to March 14, 1994, had a limit of coverage for damage caused by earthquake of $2,612,398, with a 10 percent deductible ($261,239).

The condominium complex was damaged by the Northridge earthquake. By January 25, 1994, the Homeowners Association submitted a claim to State Farm for damage to the building and common areas of the complex, as well as to at least some of the individual units. On January 29, 1994, the City of Los Angeles Department of Building and Safety (Department) inspected the property and found it was safe to occupy. The Department reported no structural damage to the property's exterior, finding only "small cracks." On February 7, 1994, a State Farm adjuster conducted a preliminary inspection of the property and noted in the claim file the damage appeared superficial.

Minutes from the February 8, 1994 meeting of the Homeowners Association's Board of Directors (Board) indicate, "The January 17 earthquake

caused superficial cosmetic damage throughout building common areas. A claim was submitted to State Farm Insurance. The insurer wants to inspect the individual units, and a contractor will also inspect to give an estimate." Minutes from a subsequent meeting on March 9, 1994, state, "The common areas apparently sustained only cosmetic damage; most units report only plaster and paint damage. [¶] One of the storage bins in the upper garage was shaken from its mount and was remounted; the balcony in Unit 308 appears to be damaged. [¶] The building's earthquake insurance coverage represents a 10% deductible amounting to $262,000. This comes out to an average of $11,932 per unit. The insurance company wants to inspect the interiors of all the units; this would require a single day in which all the units would have to be available for inspection. We would also want a second evaluation from a structural engineer. It was decided that the Board will arrange for a city structural inspection and an inspection from the insurance company, on two separate days. These inspections will be to determine structural damage to the units. [¶] The owners agreed to pay their own expenses for cosmetic damage to their own units, rather than distributing the cost among the unit owners. The [Homeowners] Association will only pay for damage to the common areas, and structural damage to the units, as determined by the inspections."

By letter dated March 17, 1994, and telephone messages on March 18 and 23, 1994, State Farm requested the Homeowners Association contact it to schedule a detailed inspection of the property. That inspection occurred over a three-day period from April 12 to April 14, 1994, during which State Farm completed its evaluation of the property's common areas and of the individual units to which it was granted access; State Farm was unable to obtain access to at least six of the individual units. Minutes from the April 14, 1994 Homeowners Association Board meeting state, "Insurance inspection of units was complete on the 12th and 13th of April. One unit had already had repairs done; other units were not accessible. To date, seven units have not been inspected. On April 14, the common areas were inspected for damage. Insurance inspectors will forward a report within a week. *No* structural damage was found. After the report is received, contractors will be contacted for an estimate of repairs."

By letter dated April 23, 1994, State Farm notified the Homeowners Association it had inspected the majority of the units and was attempting to schedule an appointment to inspect the remaining units and the building's exterior. It advised that, after completing the outstanding inspections, its repair estimate would be finalized. State Farm's claim file indicates it did not receive a response to its April 23, 1994 letter or obtain access to inspect the remaining individual units.

On April 28, 1994, State Farm prepared a cost-of-repair estimate based on the inspections it had conducted, determining the damage to the condominium complex was $112,977.80 ($96,811.81 accounting for depreciation), well below the $261,239 deductible.[1] On April 30, 1994, State Farm sent its estimate to the Homeowners Association, explaining, "We have forwarded the estimate of repairs for the units that were accessible to [the adjuster]. The external and common areas are included in our estimate. Based on our observations and estimate of the inspected areas, the total cost of repairs to the building falls below the deductible for earthquake damage. Conversations between [the adjuster] and the [building's] management company indicated they are in agreement with this assessment. [¶] Based on this information we are unable to make payment to you for earthquake damage to the building because your loss falls below the deductible. If you would like to schedule a follow up inspection, please contact me. [¶] In the event that your repair costs do exceed your earthquake deductible, please give me a call and send me a copy of your repair estimate **before** starting repairs, so I can review your estimate and determine whether payment can be made. I may need to schedule a follow up inspection at that time."[2] Minutes from the May 10, 1994 meeting of the Homeowners Association Board report, "An estimate for earthquake damage has been received from State Farm. As expected, **no structural damage** was sustained, and the total incidental damage ($96,811.81) falls far short of the deductible ($261,239). A contractor will examine the common areas and estimate the cost of cosmetic repairs in those areas." State Farm closed the claim file on April 30, 1994.

In June and July 1994 the Homeowners Association obtained bids from three contractors to repair earthquake damage at the property. According to the Homeowners Association, "the property was inspected, examined or appraised [by the three contractors] and repairs estimated as a whole." The bids ranged in price from $77,255 to $83,490.

In its first communication with State Farm since the April 1994 inspection of the complex, the Homeowners Association notified State Farm on June 23, 1994, there was a plumbing problem at the property that it believed was related to the earthquake. By telephone calls on July 2, 19 and 31, 1994, and a letter dated July 5, 1994, State Farm advised the Homeowners Association to retain a plumber to inspect the problem and provide a repair estimate.

---

[1] According to State Farm, it considered that, even if an average unit repair cost of $2,360 was used to determine repair costs for all of the units, including those to which it had not been granted access, the cost-of-repair estimate would still fall below the policy's deductible. State Farm apparently believed it had been unable to gain access to 10 of the building's units.

[2] Pursuant to the terms of the insurance policy, State Farm did pay the Homeowners Association $1,046.57 for glass breakage caused by the earthquake.

On August 3, 1994, State Farm sent another letter to the Homeowners Association, stating, "Please notify a licensed plumber to inspect and evaluate the damages in detail, and prepare a cost estimate for our review. Also please let us know if you would like us to inspect the 10 units we have been unable to gain access to date, as we will be more than happy to assess any earthquake damages to those units." According to the claim file, State Farm received no response to its August 3, 1994 letter. As a result, State Farm sent a letter to the Homeowners Association on August 20, 1994, advising, "[W]e are waiting to receive your information regarding the plumbing repairs to your property. [¶] Since we have not had a response from you we assume you do not wish to pursue this portion of your claim. As such, your file will be placed in a closed status. If you wish to pursue this matter simply call or submit the requested information for consideration."

On September 12, 1994, the Homeowners Association obtained new bids in the amounts of $36,110 and $42,185 from two of the contractors that had previously submitted estimates to repair earthquake damage at the property. Minutes from the Homeowners Association's Board meeting on September 29, 2004, indicate, "Estimates of $75,000–80,000 have been made for *complete* earthquake-related repairs. As this is beyond the Association's means, the Board inspected [t]he building to identify the most critical repairs. Escobar Construction has submitted a bid of $36,110 to complete these repairs." On October 4, 1994, the Homeowners Association entered into a contract with Escobar Construction on the $36,110 bid; and two additional work orders were written, one on November 3, 1994, in the amount of $775 and another on November 11, 1994, in the amount of $1,180.

### 2. *The Homeowners Association's Complaint for Breach of Contract and Insurance Bad Faith*

The Homeowners Association did not contact State Farm again until April 20, 2001, when, under the provisions of Code of Civil Procedure section 340.9,[3] it filed a complaint against State Farm for breach of contract, breach of the implied covenant of good faith and fair dealing and violation of Business and Professions Code section 17200 et seq. On June 8, 2001, the Homeowners Association filed a first amended complaint for breach of contract and breach of the implied covenant of good faith and fair dealing. The first amended complaint, which seeks both compensatory and punitive

---

[3] Code of Civil Procedure section 340.9 revives certain Northridge earthquake claims for policy benefits against insurers that otherwise would be time-barred in cases in which "an insured contacted an insurer or an insurer's representative prior to January 1, 2000, regarding potential Northridge earthquake damage" and provides a cause of action on such a claim may be commenced within one year of the statute's January 1, 2001 effective date. (Code Civ. Proc., § 340.9, subd. (a).)

Statutory references are to the Code of Civil Procedure unless otherwise indicated.

damages, alleges State Farm failed to investigate properly the Homeowners Association's claim of earthquake damage, failed to evaluate and adjust the claim objectively and failed to pay policy benefits to repair the damage caused to the condominium complex by the Northridge earthquake. Specifically, paragraph 15 of the Homeowners Association's first amended complaint alleges, "The inspections of each of the condominium buildings located at Plaintiff's property [were] inadequate. The loss adjuster failed to identify, address and/or report significant amounts of earthquake related damages and/or earthquake related repairs and repair costs. STATE FARM knowingly and intentionally failed to advise Plaintiff of the true nature and extent of the damage to its property. STATE FARM underestimated the true cost to repair in an effort to save money in the payment of claims." Although the pleading describes several techniques allegedly used by State Farm to underestimate Northridge earthquake losses (improper depreciation deductions, unlawful manipulation of a computerized estimating software program and failure to allow sales tax on materials), the complaint does not contain any allegation concerning the amount by which State Farm purportedly underestimated the actual losses sustained by the Homeowners Association.[4]

### 3. *State Farm's Motion for Summary Judgment*

On November 14, 2004, State Farm moved for summary judgment or in the alternative summary adjudication. In its moving papers State Farm argued its policy obligates it to pay its insured only if the amount necessary to repair earthquake damage with equivalent construction or the amount actually spent to repair or replace the damaged property exceeds the policy's deductible and the amount of earthquake damage sustained by the Cheviot Vista complex, based on State Farm's estimate, those obtained by the Homeowners Association and the amount the Homeowners Association actually spent to repair the property, was far less than the policy's deductible: State Farm's estimate was $112,977.80 ($96,811.81 accounting for depreciation); the Homeowners Association's estimates for complete repairs ranged from $77,255 to $83,490; the Homeowners Association spent less than $40,000 to repair the property; and the policy's deductible was $261,239. Accordingly, the Homeowners Association was not entitled to benefits for Northridge earthquake damage under its policy.

### 4. *The Homeowners Association's Opposition to the Summary Judgment Motion*

The Homeowners Association filed opposition papers on January 26, 2005, initially asserting the summary judgment motion should be denied, or at the

---

[4] The allegations of wrongdoing against State Farm in the instant matter are virtually identical to those at issue in this court's opinion in *Lincoln Fountain Villas Homeowners Assn. v. State Farm Fire & Casualty Ins. Co.* (2006) 136 Cal.App.4th 999 [39 Cal.Rptr.3d 345].

very least continued, because discovery had yet to be completed. In particular, the Homeowners Association noted State Farm recently had issued deposition subpoenas to several individuals familiar with the earthquake damage at the condominium complex, including former residents; the depositions of several out-of-state State Farm adjusters had just concluded; the deposition of State Farm's person most knowledgeable regarding its adjustment of Northridge earthquake claims was scheduled in approximately two weeks; and "experts have not been designated or deposed."

Alternatively, the Homeowners Association argued the motion should be denied on its merits because triable issues of material fact exist regarding the adequacy of State Farm's investigation and evaluation of its earthquake damage claim—factual issues necessary to the resolution of both its breach of contract and bad faith causes of action. According to the Homeowners Association, State Farm had wrongfully determined its earthquake damage claim was less than its policy's deductible "by lowballing [the] repair estimate and by improperly calculating the actual cash value . . . of [its] earthquake loss." To support this assertion, the Homeowners Association cited in its separate statement only to paragraph 11 of the declaration of Glenn T. Rosen, the Homeowners Association's counsel, filed concurrently with the opposition papers.

Paragraph 11 of the Rosen declaration states, "As trial is scheduled for August 9, 2005, experts, including experts who will offer testimony regarding the [Homeowners] Association's earthquake damages and State Farm's breach of contract and bad faith, will not be designated until June 1, 2005. A key element of the experts' depositions will be the differences between and the impact upon [the Homeowners Association's] allegations of bad faith stemming from [its] cost of repair estimate in the amount of $1,009,406.88 versus State Farm's repair estimate in the amount of $136,603.14." No copy of a cost-of-repair estimate or any further information is attached to or identified in the Rosen declaration or elsewhere in the opposition papers regarding State Farm's purported failure to objectively evaluate and adjust the Homeowners Association's earthquake damage claim.[5]

---

[5] Although the Homeowners Association's response to State Farm's separate statement of undisputed material facts is entitled "Plaintiff's Separate Statement of Disputed and Undisputed Material Facts and Plaintiff's Undisputed Material Facts," it contains no facts in addition to those listed by State Farm. Of State Farm's 50 proffered facts, the Homeowners Association agreed that 46 are undisputed. It disputed the relevance of statements made by one of its residents and by its property manager and of the basis for its decision to file suit against State Farm. It also disputed State Farm's statement, "The [Homeowners Association] has not identified the amount allegedly due under the Policy for any specific item or items of purported earthquake damage." In response, the Homeowners Association, citing paragraph 11 of the Rosen declaration, asserted, "The response to this undisputed fact is a matter of expert opinion. Experts have not been designated or deposed as of yet." While not a ground relied on by the

Finally, the Homeowners Association maintained summary judgment should be denied on the ground section 340.9 obligated State Farm to investigate and adjust the claim made in its lawsuit that it had newly discovered earthquake damage and State Farm had failed to do so.

### 5. *State Farm's Reply in Support of Summary Judgment and Objection to the Homeowners Association's Evidence*

On February 3, 2005, State Farm filed a reply memorandum in support of summary judgment and objections to paragraph 11 of the Rosen declaration on the grounds it is "vague, ambiguous, lacks foundation, contains hearsay statements, misstates the evidence and is irrelevant." In particular, State Farm objected that Rosen had not established that either "he or his 'experts' have the requisite 'special knowledge, skill, experience, training or education' to qualify as experts concerning the earthquake, the policy or State Farm's claims handling." It also objected Rosen had not established that either "he or his 'experts' (1) are qualified to distinguish earthquake damage from damage caused by other causes, (2) knew the condition of the property prior to the earthquake, or (3) knew the condition of the property following the earthquake. Mr. Rosen has not even attempted to establish what he or his 'experts' did to determine the nature and/or cost of repair to [the Homeowners Association's] purported earthquake damage. Nor has he shown knowledge by himself or his 'experts' regarding repairs completed or underway." In addition, State Farm objected the declaration contains impermissible hearsay evidence as to the findings of other consultants or individuals, citing Evidence Code section 1200.

### 6. *The Trial Court's Ruling on the Motion for Summary Judgment*

The trial court heard oral argument on State Farm's motion on February 8, 2005, and then granted the motion: "Plaintiff[] ha[s] never submitted evidence that the cost of repair comes close to the deductible. Plaintiff spent $40,000 on repairs and the deductible is approximately $260,000. The claim file was closed in August 1994 with no request to reopen the claim. This action was filed in [April] 2001. The undisputed facts in the separate statement establish that State Farm fulfilled [its] duty under the insurance

---

trial court in granting summary judgment, this response in the Homeowners Association's separate statement is insufficient to create a triable issue of material fact. Stating that experts have yet to be designated or deposed does not identify "the nature of the dispute and describe the evidence that supports the position that the fact is controverted." (Cal. Rules of Court, rule 342(f); see *Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1209–1210 [35 Cal.Rptr.3d 411].)

contract. Motion to continue is denied." The trial court did not rule on State Farm's objections to paragraph 11 of the Rosen declaration, merely stating, "In reaching its ruling and Order in this matter, this Court has considered only admissible evidence." Judgment in favor of State Farm was entered on March 22, 2005.

## CONTENTIONS

The Homeowners Association contends the trial court erred by granting summary judgment because (1) State Farm's failure to investigate its newly discovered earthquake damage constitutes a breach of the insurance contract and bad faith; (2) evidence of newly discovered earthquake damage—estimated at more than seven times the cost-of-repair estimate prepared by State Farm in 1994—creates a triable issue of material fact regarding whether in 1994 State Farm failed to adequately investigate and evaluate its earthquake damage claim; and (3) the methodology used by State Farm in 1994 to calculate the amount of its loss was impermissible. At a minimum, the Homeowners Association contends, the trial court should have continued the hearing on the motion for summary judgment under section 437c, subdivision (h), because discovery had yet to be completed.

## DISCUSSION

### 1. *Standard of Review*

We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348 [1 Cal.Rptr.3d 32, 71 P.3d 296]; § 437c, subd. (c).)

### 2. *The Trial Court Properly Granted Summary Judgment*

#### a. *State Farm satisfied its initial burden of demonstrating the Homeowners Association could not establish necessary elements of its causes of action*

Under the terms of the Homeowners Association's policy with State Farm, the Homeowners Association was entitled to be paid either the actual cash value or the replacement cost of property lost or damaged by the Northridge earthquake. Payment based on replacement cost (without deduction for depreciation) will not be made until the lost or damaged property is actually repaired or replaced, and the sum paid will not exceed the amount actually

spent for the repairs or replacement of the property.[6] The policy, with a limit for earthquake damage of $2,612,398, carried a 10 percent deductible of $261,239 and provided, "We will not pay for loss in any one occurrence until the amount of loss exceeds the deductible. We will then pay only the amount of loss in excess of the deductible up to the applicable limit of insurance."

The undisputed facts before the trial court on summary judgment established that in April 1994 State Farm, after conducting a detailed inspection of the property (except for the individual units to which it was not granted access), determined the replacement cost value for the damage to the condominium complex was $112,977.80 (a sum that did not include any deduction for depreciation). Because this amount of damage was far less than the policy's $261,239 deductible, State Farm notified the Homeowners Association it was not entitled to benefits under its policy for earthquake damage. Minutes from the Homeowners Association's Board meetings in the months following the earthquake indicate the Homeowners Association was in agreement with this evaluation; and, indeed, a city inspector had determined shortly after the earthquake the exterior of the property had no structural damage and had suffered only "small cracks." Moreover, after receiving State Farm's estimate, the Homeowners Association obtained bids from three contractors to repair the "*complete*" earthquake damage, which ranged in amount from $77,255 to $83,490, all less than State Farm's estimate. Ultimately, in November 1994 the Homeowners Association chose to repair only the most significant earthquake damage and hired a contractor that completed the work for less than $40,000. Despite numerous requests from State Farm, the Homeowners Association never granted State Farm access to the individual units that had not been inspected, nor did it submit an estimate for the plumbing problem it had discovered in June 1994. Indeed, State Farm did not hear again from the Homeowners Association until this litigation—almost eight years later.

---

[6] Section 1, paragraph 2 (Valuation) of the policy provides, "The value of covered property will be determined at: [¶] (a) replacement cost, without deduction for depreciation, as of the time of loss to all covered property . . . but: [¶] (1) you may make a claim for loss covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss; [¶] (2) we will not pay for any loss on a replacement cost basis until the lost or damaged property is actually repaired or replaced and then, only if the repairs or replacement are made as soon as reasonably possible after the loss; [¶] (3) we will not pay more for loss in any one occurrence on a replacement cost basis than the least of: [¶] . . . [¶] (b) the cost to replace the lost or damaged property on the same premises with other property of comparable material and quality that can be used for the same purpose; or [¶] (c) the amount you actually spend that is necessary to repair or replace the lost or damaged property."

■ This evidence is sufficient to satisfy State Farm's initial burden on summary judgment as to the causes of action for both breach of contract and bad faith: State Farm's estimate and those of the three contractors retained independently by the Homeowners Association all indicated the damage to the condominium complex was far less than the policy's deductible. The Homeowners Association ultimately decided to spend even less to repair only the most significant earthquake damage. As a result, according to the evidence submitted with the moving papers, State Farm did not owe benefits to the Homeowners Association under the terms of the policy and, therefore, did not breach the insurance contract based on its adjustment of the claim in 1994. In addition, because State Farm satisfied its initial burden of establishing it did not breach the insurance policy in 1994, absent evidence from the Homeowners Association creating a triable issue of material fact, the bad faith cause of action necessarily falls as well. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 [44 Cal.Rptr.2d 370, 900 P.2d 619] ["Absent th[e] contractual right [to policy benefits], the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.' [Citation.]"]; *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151 [271 Cal.Rptr. 246] ["Where benefits are withheld for proper cause, there is no breach of the implied covenant"].)

b. *The Homeowners Association failed to present competent evidence creating a triable issue of material fact regarding newly discovered earthquake damage*

Because State Farm made a prima facie showing the Homeowners Association could not prove either breach of contract or breach of the implied covenant of good faith and fair dealing, its initial burden on summary judgment, the burden shifted to the Homeowners Association to demonstrate, "by responsive separate statement and admissible evidence, that triable issue[s] of fact exist." (*Rosenblum v. Safeco Ins. Co.* (2005) 126 Cal.App.4th 847, 856 [24 Cal.Rptr.3d 427] (*Rosenblum*); § 437c, subd. (p)(2); see *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476–477 [110 Cal.Rptr.2d 370, 28 P.3d 116].) In its opposition to summary judgment, the Homeowners Association presented three arguments: (1) State Farm had an affirmative obligation under section 340.9 to investigate the Homeowners Association's newly discovered earthquake damage and its failure to do so constitutes a breach of the insurance contract and bad faith; (2) the evidence of newly discovered earthquake damage, estimated at $1,009,406.88 to repair (more than seven times the cost-of-repair estimate prepared by State Farm in 1994), creates a triable issue of material fact regarding the Homeowners Association's entitle-

ment to policy benefits and the adequacy of State Farm's 1994 investigation and evaluation of the Homeowners Association's earthquake damage claim; and (3) the methodology used by State Farm in 1994 to calculate the actual cash value of the loss impermissibly included deductions for depreciation and overhead and profit.

■ The Homeowners Association's initial argument that section 340.9 created a duty for insurers to investigate newly discovered earthquake damage has been expressly rejected by this court. In *Lincoln Fountain Villas Homeowners Assn. v. State Farm Fire & Casualty Ins. Co.*, *supra*, 136 Cal.App.4th at pp. 1005–1006 (*Lincoln*), we held section 340.9, while reviving certain time-barred earthquake damage claims and allowing an insured to bring a cause of action against its insurer on such a claim within one year of the statute's effective date, did not impose any renewed or additional duties on insurance carriers. (See also *1231 Euclid Homeowners Assn. v. State Farm Fire & Casualty Co.* (2006) 135 Cal.App.4th 1008, 1020 [37 Cal.Rptr.3d 795] ["the passage of section 340.9 did not give or create any rights for [an insured] beyond a one-year window to file any claim *it might otherwise have*"]; *Rosenblum*, *supra*, 126 Cal.App.4th at p. 858 ["Section 340.9 did nothing more than reopen the filing window, for a one-year period, to those *otherwise viable* cases that had become time-barred"].)

To suggest otherwise is to misunderstand the limited scope of section 340.9 to "obviate the adverse impact the one-year limitations period [included in homeowners insurance policies pursuant to Insurance Code section 2071] was having on the ability of many insureds to obtain compensation from their insurance companies for property damage caused by the Northridge earthquake." (*Lincoln*, *supra*, 136 Cal.App.4th at p. 1006.) In an action made timely under section 340.9, "[s]ubsequently discovered evidence of earthquake damage may or may not support a claim an insurer's initial investigation and adjustment of a claim were deficient, but it does not impose on the insurer a new duty to investigate. [Citations.]" (*Lincoln*, at p. 1009.) Because in the instant action State Farm did not assert a time- limitation defense as a ground for summary judgment, "section 340.9 is irrelevant to our review of the trial court's order granting State Farm's motion. [Citation.]" (*Id.* at p. 1007.)

The Homeowners Association's second argument that a triable issue of material fact exists regarding the adequacy of State Farm's 1994 investigation and evaluation of its claim is based on the contention it has newly discovered earthquake damage at the property, which will cost $1,009,406.88 to repair. As the only support for this contention, the Homeowners Association offered

the declaration of its counsel, who, in reporting that experts in the case had yet to be designated, stated, "A key element of the experts' depositions will be the differences between and the impact upon [the Homeowners Association's] allegation of bad faith stemming from [its] cost of repair estimate in the amount of $1,009,406.88 versus State Farm's repair estimate in the amount of $136,603.14."[7] Other than this bare reference to a $1 million repair estimate, the Homeowners Association proffered no evidence—not a copy of an estimate, not a declaration from someone who had inspected the property, not even a statement the property had been inspected by a qualified individual—to support its claim of newly discovered earthquake damage.[8]

Counsel's testimony is wholly insufficient to create a triable issue of material fact on summary judgment regarding the Homeowners Association's contention State Farm in 1994 failed to adequately investigate and evaluate its earthquake damage claim. In *Lincoln, supra,* 136 Cal.App.4th 999, we held a declaration by the insured's counsel stating " '[c]onsultants retained by Plaintiff have prepared reports and estimates regarding the nature and cost of repair for the [plaintiff's] earthquake damages . . .' " in an amount three times greater than the insurer's 1994 estimate was insufficient to create a triable issue of fact regarding the adequacy of the adjustment and payment of an earthquake damage claim. (*Id.* at pp. 1009–1010, citing *Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 524 [78 Cal.Rptr.2d 122] ["an opinion unsupported by reasons or explanations does not establish the absence of a material fact issue for trial, as required for summary judgment"]; *People v. Bassett* (1968) 69 Cal.2d 122, 148 [70 Cal.Rptr. 193, 443 P.2d 777] ["[w]hen the foundation of an expert's testimony is determined to be inadequate as a matter of law, we are not bound by an apparent conflict in the evidence created by his bare conclusions"].) Counsel's statement in his declaration in this case is even

---

[7] It is unclear why the Homeowners Association's counsel described State Farm's cost-of-repair estimate at $136,603.14, given State Farm's replacement-cost valuation of $112,977.80 and its actual-cash valuation, including depreciation deductions, of $96,811.81.

[8] Although in its opening brief the Homeowners Association provides a litany of alleged newly discovered damage at the condominium complex, no evidence of that damage was presented in opposition to summary judgment. It is axiomatic that in "reviewing a motion for summary judgment, the relevant facts are limited to those set forth in the parties' statements of undisputed facts, supported by affidavits and declarations, filed in support of and opposition to the motion in the present case, to the extent those facts have evidentiary support. [Citations.]" (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 112 [113 Cal.Rptr.2d 90].) Indeed, the Homeowners Association fails to cite to the record at all to support its description on appeal of the alleged newly discovered damage. (*Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 29 [96 Cal.Rptr.2d 553] ["appellant must support all statements of fact in his briefs with citations to the record [citation] and must confine his statement 'to matters in the record on appeal.' [Citation.]"].)

more deficient than the statement in *Lincoln.* Here, counsel does not even state the Homeowners Association retained a consultant to inspect the property and prepare an estimate. Counsel's passing reference to a $1 million cost-of-repair estimate is not a basis to defeat summary judgment.[9]

The Homeowner Association's final argument that in 1994 State Farm used an impermissible methodology to calculate the actual cash value of its loss by deducting for depreciation and failing to include overhead and profit ignores the undisputed fact that State Farm's estimate, even without deductions for depreciation and considering amounts for overhead and profit, was far less than the deductible under the Homeowners Association's insurance policy. In addition, even if State Farm's methodology had been improper, any impropriety was effectively mooted by the undisputed fact the Homeowners Association retained three contractors that all prepared bids (including overhead and profit) that were less than State Farm's estimate calculated with the allegedly impermissible deductions; and the Homeowners Association ultimately elected to repair only certain items of damage on the property for less than $40,000, an amount not even approaching the policy's $261,239 deductible. As the trial court determined, "[t]he undisputed facts in the separate statement establish that State Farm fulfilled [its] duty under the insurance contract."

   c. *The trial court did not abuse its discretion by declining to continue the hearing on the summary judgment motion*

The Homeowners Association argues the trial court erred by failing to deny, or at least continue, State Farm's summary judgment motion to allow it

---

[9] As discussed, State Farm objected to paragraph 11 of the Rosen declaration, which included the mention of the $1 million cost-of-repair estimate. As in *Lincoln, supra,* 136 Cal.App.4th at page 1010, footnote 4, "[t]he trial court should have, but for some reason did not, rule on those objections, one or more of which appear to have been well taken." (The trial court's assertion it considered only admissible evidence is not an acceptable alternative to a ruling on the objections. See *Swat-Fame, Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 623 [124 Cal.Rptr.2d 556], disapproved on another ground in *Zamos v. Stroud* (2004) 32 Cal.4th 958, 973 [12 Cal.Rptr.3d 54, 87 P.3d 802]; *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 238 [114 Cal.Rptr.2d 151].) "As a general rule, on appeal from an order granting summary judgment the reviewing court may consider any objected-to evidence in the absence of a ruling in the trial court. [Citations.]" (*Lincoln,* at p. 1010, fn. 4.) "Nonetheless, it is our responsibility in reviewing an order granting summary judgment to independently determine the effect of the evidence submitted. [Citation.]" (*Ibid.*) Accordingly, as in *Lincoln,* although we accept paragraph 11 of the Rosen declaration as part of the record to be considered in determining whether a triable issue of material fact exists, "its multiple deficiencies as an expert opinion require the conclusion that, as a matter of law, it is insufficient to defeat summary judgment." (*Ibid.*)

to complete outstanding discovery and to await the designation and depositions of expert witnesses. (See § 437c, subd. (h) [requiring trial court to deny or continue a motion for summary judgment when party demonstrates "facts essential to justify opposition may exist but cannot, for reasons stated, then be presented"].)[10] The trial court did not abuse its discretion. (See *People ex rel. Dept. of Transportation v. Outdoor Media Group* (1993) 13 Cal.App.4th 1067, 1077 [17 Cal.Rptr.2d 19] [§ 437c, subd. (h), ruling reviewed for abuse of discretion].)

None of the four bases cited by the Homeowners Association in support of its request under section 437c, subdivision (h), included "facts essential to justify opposition" that could not then be presented: First, the Homeowners Association did not identify any information that might be obtained as a result of State Farm's recently issued deposition subpoenas that would shed light on the dispositive issue on summary judgment, namely, whether the earthquake damage to the property exceeded the policy's deductible. Second, although the Homeowners Association also noted the depositions of several out-of-state State Farm adjusters had just concluded, it failed to indicate why, given the depositions were then complete, it could not rely on, or at least identify, any relevant evidence in opposing summary judgment. Third, the information the Homeowners Association obtained after filing its opposition papers from the deposition of State Farm's person most knowledgeable regarding company policies in response to the passage of section 340.9 was simply irrelevant to the summary judgment motion because, as explained, section 340.9 did not create any affirmative duties on the part of insurance carriers. Finally, the Homeowners Association's position it was entitled to at least a continuance of the summary judgment motion on the basis "experts have not been designated or deposed" is simply nonsensical. Nothing, other than perhaps questionable tactics, prevented the Homeowners Association from relying on its own expert evidence in opposing summary judgment if crucial to create a triable issue of material fact. Indeed, to suggest a summary judgment motion could not be granted because experts had yet to be designated or deposed would render the entire summary judgment procedure meaningless, given a summary judgment motion must be filed no less than 105 days prior to trial and expert disclosure generally does not occur until 50 days before trial. (§§ 437c, subd. (a), 2034.230, subd. (b).)

---

[10] Section 437c, subdivision (h), provides, "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just."

## DISPOSITION

The judgment is affirmed. State Farm is to recover its costs on appeal.

Johnson, J., and Woods, J., concurred.